STATE OF CONNECTICUT *v.* ANGEL GONZALEZ
(AC 27820)

Bishop, DiPentima and Freedman, Js.

Argued September 17, 2007—officially released March 11, 2008

*Christopher M. Neary*, special public defender, for the appellant (defendant).

*Nancy L. Chupak*, assistant state's attorney, with whom, on the brief, were *James E. Thomas*, former state's attorney, and *David L. Zagaja*, assistant state's attorney, for the appellee (state).

*Opinion*

DiPENTIMA, J. The defendant, Angel Gonzalez, appeals from the judgment of conviction, rendered after a jury trial, of murder in violation of General Statutes § 53a-54a. On appeal, the defendant claims that the trial court (1) failed to provide the jury with a special credibility instruction with respect to jailhouse informants, (2) improperly admitted into evidence certain hearsay testimony, (3) improperly instructed the jury, (4) improperly admitted evidence pertaining to motive, (5) improperly denied the defendant's motion for a new trial and (6) improperly permitted the state to question a witness with respect to the issue of alibi.[1] We are not persuaded by any of the defendant's claims and, accordingly, affirm the judgment of the trial court.

The jury reasonably could have found the following facts relating to two separate homicides. The first homicide occurred on the evening of November 15, 2003. Detective Michael Sheldon of the Hartford police department participated in the investigation of this crime, which occurred in the area of Farmington Avenue in Hartford. In this shooting, Smaely Tineo shot and killed Michael Zuckowski, also known as "Psyche."

---

[1] The defendant also claims that the state engaged in prosecutorial impropriety. With respect to this claim, the defendant has failed to cite to any relevant case law and has provided no analysis. We therefore conclude that it has been abandoned and decline to consider its merits.

Zuckowski and Lamar Williams, the victim in the present case, were friends. During his investigation, Sheldon learned that the victim was seen removing a shotgun from the scene at Farmington Avenue and handing it to Jasenia Rodriguez, who had witnessed Tineo shoot Zuckowski.[2] Rodriguez was frightened and, following the victim's instructions, took the shotgun to her home. The victim retrieved the shotgun later that night. Sheldon also became aware that Tineo "hung out" and "was friends" with a person known as "Clowny," who was later identified as the defendant. About one hour after the shooting of Zuckowski, a video camera at a Taco Bell restaurant recorded the defendant, who performed at children's parties as a clown, riding his unicycle while wearing his clown attire in a parking lot across the street from the Zuckowski murder scene.

With respect to the second homicide, which led to the prosecution that is the subject of this appeal, the jury reasonably could have found the following facts. During the early morning hours of November 16, 2003, Robert Riley went to 198-200 South Marshall Street in Hartford to purchase drugs from the victim. Riley, the victim and another person were in the hallway conducting their transaction while a fourth individual, Anthony Mickens, went upstairs. The defendant, wearing a mask, entered the building and shot the victim two times. Officer Michael Kot of the Hartford police department arrived on the scene and found the victim on a landing with no pulse and dilated pupils. It was later determined that the victim died as a result of bleeding from his gunshot wounds. The defendant was arrested on December 9, 2003, for this shooting.

The jury found the defendant guilty of murder. The court sentenced the defendant to a total effective term

---

[2] Sheldon testified that the altercation between Zuckowski and Tineo began when Zuckowski threatened Tineo with the shotgun.

of forty-two years incarceration. This appeal followed. Additional facts will be set forth as necessary.

I

The defendant first claims that the court failed to provide the jury with a special credibility instruction with respect to jailhouse informants. Specifically, he argues that the failure to provide the jury with such an instruction deprived him of his right to due process under both the state and federal constitutions.[3] We disagree.

The following additional facts are necessary for our discussion. Charles McClairen testified that he had a felony narcotics conviction in 2000, and, at the time of his testimony, had pending charges of sale of a controlled substance and robbery in the first degree. McClairen knew the defendant as "Clown." While incarcerated, McClairen spoke with the defendant in late March or early April, 2003, and the defendant opined that he would not be convicted because the state would not be able to use an individual known as "Butter" as a witness against him. According to the defendant, without Butter's testimony, the state's case would fail. Later that day, after the defendant returned to the lockup from a court proceeding, he appeared dejected because his case was going to proceed. The defendant then told McClairen that he had shot a person on South Marshall Street.[4]

---

[3] Although the defendant also claims deprivation of his rights under the state constitution, he has failed to provide any independent analysis of the issues pursuant to the state constitution. Accordingly, we limit our analysis to those guarantees provided in the federal constitution. See State v. Smith, 275 Conn. 205, 216 n.5, 881 A.2d 160 (2005).

[4] McClairen sent a letter to the state's attorney's office in an effort to broker a deal with respect to his pending robbery charges. McClairen acknowledged that the state did not make any promise to him with respect to his testimony against the defendant. He did admit that he hoped to get some consideration from the state and that he was not testifying "to be a good citizen," but rather for the prospect of a reduction in jail time.

Trevor Bennett testified that he had been convicted of a felony in 1999 and had several pending charges relating to a stolen firearm, as well as a violation of his probation. He also knew the defendant as "Clown." The defendant and Bennett were cell mates in January, 2004. The defendant told Bennett that he and Tineo were "like brothers" and that Tineo was responsible for Zuckowski's death. Bennett also testified that the defendant admitted to having killed the victim.[5]

During a colloquy between the court and counsel regarding the jury instruction, the court indicated that it had a change to the "usual" charge with respect to the credibility of witnesses. It then inquired whether either party had any objection. Both the prosecutor and defense counsel *expressly indicated* that there was *no objection* to the court's charge. Following the conclusion of the jury charge, defense counsel raised a solitary objection to the charge as it pertained to the issue of consciousness of guilt. He did not raise any objection with respect to the issue of the credibility of witnesses.

As a preliminary matter, we must determine whether the defendant preserved this claim for appellate review. The defendant concedes that "no specific request was made by defense counsel for an instruction regarding jailhouse informants in the manner of *Patterson*."[6] He

[5] Bennett provided this information to the state's attorney's office because he was "looking for some leniency." He further stated that the state did not promise or make any offer in exchange for his testimony against the defendant. He also admitted that the only reason for testifying was a possible reduction in his jail time.

[6] In *State* v. *Patterson*, 276 Conn. 452, 465, 886 A.2d 777 (2005), one of the state's witnesses, a jailhouse informant, was contacted by police officers. The informant stated that he would assist the officers only in exchange for certain benefits. Id. In exchange for these benefits, the informant testified against the defendant at his trial.

The defendant in *Patterson* submitted a proposed jury instruction to the court pertaining to the informant's credibility. Id. The court denied this request. Id., 466. Our Supreme Court noted that, as a general matter, a defendant "is not entitled to an instruction singling out any of the state's witnesses and highlighting his or her possible motive for testifying falsely."

then states that because the court altered its charge with respect to the issue of credibility of witnesses, the *Patterson* issue was preserved. The state disagrees with the defendant's arguments and maintains that the issue is not preserved. We agree with the state.

Our Supreme Court has stated: "It is well settled, therefore, that a party may preserve for appeal a claim that an instruction, which was proper to give, was none-theless defective either by: (1) submitting a written request to charge covering the matter; or (2) taking an exception to the charge as given. . . . Moreover, the submission of a request to charge covering the matter at issue preserves a claim that the trial court improperly failed to give an instruction on that matter. . . . In each of these instances, the trial court has been put on notice and afforded a timely opportunity to remedy the error. . . . *It does not follow, however, that a request to charge addressed to the subject matter generally, but which omits an instruction on a specific component, preserves a claim that the trial court's instruction regarding that component was defective.*" (Citations omitted; emphasis added.) *State v. Ramos*, 261 Conn. 156, 170–71, 801 A.2d 788 (2002); *State v. William C.*,

(Internal quotation marks omitted.) Id., 467. The court, however, concluded that under certain circumstances, such an instruction is required. It stated: "We agree with the defendant that an informant who has been promised a benefit by the state in return for his or her testimony has a powerful incentive, fueled by self-interest, to implicate falsely the accused. Consequently, the testimony of such an informant, like that of an accomplice, is inevitably suspect. As the United States Supreme Court observed more than fifty years ago, [t]he use of informers, accessories, accomplices, false friends, or any of the other betrayals which are dirty business may raise serious questions of credibility. . . . Because the testimony of an informant who expects to receive a benefit from the state in exchange for his or her cooperation is no less suspect than the testimony of an accomplice who expects leniency from the state, we conclude that the defendant was entitled to an instruction substantially in accord with the one that he had sought." (Citations omitted; internal quotation marks omitted.) Id., 469–70; *State v. Arroyo*, 104 Conn. App. 167, 172–73, 931 A.2d 975, cert. granted on other grounds, 284 Conn. 938, 937 A.2d 694 (2007).

71 Conn. App. 47, 76, 801 A.2d 823 (2002), rev'd on other grounds, 267 Conn. 686, 841 A.2d 1144 (2004); see also Practice Book § 42-16.

In the present case, defense counsel, at the conclusion of the court's charge, indicated on the record that there was no objection with respect to the instructions pertaining to the credibility of the witnesses. The mere fact that an issue was discussed prior to charging the jury does not preserve the issue for appellate review. We therefore conclude that the defendant failed to preserve the issue of an instruction regarding jailhouse informants in the manner articulated in *Patterson* for our review.

The defendant requests, in the alternative, that we review his claim pursuant to *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989). "Under *Golding*, a defendant can obtain review of an unpreserved claim only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. In the absence of any one of these conditions, the defendant's claim will fail. . . . The first two steps in the *Golding* analysis address the reviewability of the claim, whereas the last two steps address the merits of the claim." (Citation omitted; emphasis in original; internal quotation marks omitted.) *State* v. *Solomon*, 103 Conn. App. 530, 533–34, 930 A.2d 716 (2007).

A recent decision of this court has foreclosed the argument set forth by the defendant. In *State* v. *Martinez*, 95 Conn. App. 162, 166 n.3, 896 A.2d 109, cert.

denied, 279 Conn. 902, 901 A.2d 1224 (2006), the defendant argued that the jury instruction rule set forth in *Patterson* should be applied retroactively. In rejecting this claim, we noted that the *Patterson* rule is not constitutional in nature. Id.; see also *State* v. *Patterson*, 276 Conn. 452, 471–72, 886 A.2d 777 (2005); *State* v. *Solomon*, supra, 103 Conn. App. 536. We also stated that because the defendant in *Martinez* had failed to request such an instruction or raise the issue before the trial court, to permit him to do so on appeal would result in a substantially inequitable result and "would be nothing more than a trial by ambuscade of the trial judge." (Internal quotation marks omitted.) *State* v. *Martinez*, supra, 167 n.3. We conclude, therefore, that the defendant's claim that the court failed to instruct the jury that jailhouse informant testimony should be viewed with caution is not of constitutional magnitude and therefore fails to satisfy the second prong of *Golding*.

II

The defendant next claims that the court improperly admitted into evidence certain hearsay testimony.[7] Specifically, he argues that the state failed to produce evidence to identify the defendant as the speaker of a statement implicating "Clown" as the shooter of the victim approximately one month after the victim was killed. We conclude, however, that as a result of the

---

[7] Practice Book § 67-4 (d) (3) provides: "When error is claimed in any evidentiary ruling in a court or jury case, the brief or appendix shall include a verbatim statement of the following: the question or offer of exhibit; the objection and the ground on which it was based; the ground on which the evidence was claimed to be admissible; the answer, if any; and the ruling." We note that the defendant's brief did not comply with these requirements. Although we do not condone this failure to follow our rules of practice, we do not consider it fatal to the defendant's claim. See *Wilkes* v. *Wilkes*, 55 Conn. App. 313, 323 n.9, 738 A.2d 758 (1999); see also *Rivnak* v. *Rivnak*, 99 Conn. App. 326, 327 n.1, 913 A.2d 1096 (2007); contra *State* v. *Morris*, 95 Conn. App. 793, 800 n.7, 898 A.2d 822, cert. denied, 280 Conn. 939, 912 A.2d 476 (2006).

defendant's failure to brief the issue of harmfulness, this claim lacks merit.

The following additional facts are necessary for our discussion. The state called Riley as a witness. Riley was purchasing cocaine from the victim at the time of the shooting. After Riley testified with respect to the events of November 16, 2003, the prosecutor asked him about a subsequent incident involving two individuals who approached him on the street. Defense counsel raised a preliminary objection to this testimony, which the court overruled. Riley was asked if the individuals approached him, and he stated: "They didn't approach me, they just walked in . . . and said, hey, you know, come here. I said, who are you; he says, My name is Clown. So—." The court inquired whether there was an objection, and defense counsel responded in the affirmative and argued that "[w]e don't know who these people are." At this point, the court excused the jury.

Outside of the presence of the jury, the state continued with its proffer and the following colloquy occurred:

"Q. One of them said, I'm Clown?

"A. Yeah, he said, 'My name is Clown.'

"Q. Did he say anything else to you?

"A. Yes, he says, 'Why you running around telling people that I shot [the victim]?' And I says, 'I don't know who shot [the victim].' I said, 'I don't'—'I don't know you from a can of worms.' I said, you know, 'who's Clown?' I says I don't know who shot [the victim]. I said I couldn't tell who shot [the victim]. You know, I says everyone else is saying that. I'm not the one who's saying that. I said, because I don't know."

Riley indicated that he could not describe the speaker or identify his race, height or weight.[8] Riley estimated

---

[8] In his appellate brief, the defendant contends that "Riley could not even identify the sex of the speaker, let alone race, height or other defining

that this incident occurred approximately one month after the shooting. At the conclusion of the state's proffer, defense counsel stated: "Your Honor, my client is known as Clown. We have an identified person saying that it's Clown. This witness is now saying that he doesn't know who's telling the tales about this with Clown. We're getting all of this street talk in here without any way to verify or cross-examine the person who's giving the street talk. So, the reliability's not great. And the prejudice is." After additional argument, the court asked if there would be other evidence "tying the defendant in . . . ." The state claimed that there would be evidence from another witness who could identify the defendant and who was threatened by the defendant.

The court ruled that the evidence was "quite probative" and outweighed any prejudicial effect. The court also determined that the testimony was sufficiently reliable to be admitted into evidence and that Riley would be subject to cross-examination. The court then overruled the defendant's objections. After the jury returned, Riley provided the jury with the details of the incident.

As a preliminary matter, we set forth the applicable standard of review. "The trial court's ruling on evidentiary matters will be overturned only upon a showing of a clear abuse of the court's discretion. . . . We will make every reasonable presumption in favor of upholding the trial court's ruling, and only upset it for a manifest abuse of discretion. . . . When an improper evidentiary ruling is not constitutional in nature, the defendant bears the burden of demonstrating that the error was harmful. . . . [A] nonconstitutional error is

characteristics." Although Riley acknowledged that he could not identify the sex of the individual who shot the victim on November 16, 2003, he was able to determine that the two individuals who approached him approximately one month later were males. Specifically, he testified before the jury that by the sound of the voice he heard, the speaker was a male.

harmless when an appellate court has a fair assurance that the error did not substantially affect the verdict." (Citation omitted; internal quotation marks omitted.) *State* v. *LaVallee*, 101 Conn. App. 573, 578, 922 A.2d 316, cert. denied, 284 Conn. 903, 931 A.2d 267 (2007); see also *State* v. *Ortiz*, 101 Conn. App. 411, 427, 922 A.2d 244, cert. denied, 283 Conn. 911, 928 A.2d 538 (2007). Put another way, "[w]*here evidentiary error is claimed, the defendant bears the burden of proving the harmfulness of the error before a new trial will be granted.*" (Emphasis added; internal quotation marks omitted.) *State* v. *Jackson*, 86 Conn. App. 803, 809, 862 A.2d 880, cert. denied, 273 Conn. 909, 870 A.2d 1081 (2005); *State* v. *Wargo*, 53 Conn. App. 747, 759, 731 A.2d 768 (1999), aff'd, 255 Conn. 113, 763 A.2d 1 (2000).

We need not discuss the merits of this claim because even if we were to assume, without deciding, that the court improperly admitted Riley's testimony into evidence, the defendant has failed to demonstrate how this ruling was harmful. Absent any analysis as to how the ruling harmed the defendant, we are unable to conclude that the admission of this evidence was an abuse of discretion. See *State* v. *LaVallee*, supra, 101 Conn. App. 579; *Bicio* v. *Brewer*, 92 Conn. App. 158, 171–72, 884 A.2d 12 (2005); *State* v. *Coleman*, 35 Conn. App. 279, 288–89, 646 A.2d 213, cert. denied, 231 Conn. 928, 648 A.2d 879 (1994); see also *Desrosiers* v. *Henne*, 283 Conn. 361, 367–68, 926 A.2d 1024 (2007) (claim of evidentiary impropriety fails on appeal when appellate court has no way of determining whether impropriety harmful in context of entire trial).

### III

The defendant next claims that the court improperly instructed the jury. Specifically, he argues that the court failed to instruct the jury that it had to find beyond a reasonable doubt that it was the defendant who approached Riley approximately one month after the

shooting. He further contends that the court improperly marshaled the evidence. Finally, the defendant asserts that the court improperly instructed the jury on consciousness of guilt when there was no evidence identifying the defendant as the person who approached Riley one month after the shooting. We are not persuaded.

A

We may quickly dispose of the defendant's first two claims of improper jury instructions. The defendant claims that the court improperly failed to instruct the jury that it had to find beyond a reasonable doubt that it was the defendant who confronted Riley approximately one month after the shooting and that the court improperly marshaled the evidence against him. The state counters that the defendant failed to preserve the claims and, furthermore, did not request either *Golding* or plain error review. See Practice Book § 60-5. We agree with the state and, therefore, decline to review these claims.

As we noted in part I, a party preserves a claim of a defective jury instruction by filing a written request to charge or by taking an exception to the charge as given. See *State* v. *Ramos*, supra, 261 Conn. 170; *State* v. *William C.*, supra, 71 Conn. App. 76; Practice Book § 42-16. The defendant's sole objection to the court's instruction was limited to the issue of whether there was evidence identifying the defendant as the person who approached Riley subsequent to the shooting. We conclude, therefore, that the defendant failed to preserve his first two claims with respect to the court's instructions.[9]

---

[9] We note that even if the defendant had preserved these claims for our review, we would conclude that they are without merit. The identity of the person who approached Riley subsequent to the shooting was not an element of the crime, and, therefore, the state was not required to prove it beyond a reasonable doubt. See *State* v. *Aloi*, 280 Conn. 824, 842, 911 A.2d 1086 (2007); *State* v. *Padua*, 273 Conn. 138, 146–47, 869 A.2d 192 (2005).

We further conclude that the court did not abuse its discretion when it marshaled the evidence and stated to the jury that "[t]here was evidence that [Tineo] was a friend of the defendant . . . ." First, the court instructed

Additionally, the defendant failed to request review pursuant to *Golding* or the plain error doctrine. See Practice Book § 60-5. "This court often has noted that it is not appropriate to engage in a level of review that is not requested. . . . When the parties have neither briefed nor argued plain error [or *Golding* review], we will not afford such review." (Internal quotation marks omitted.) *State* v. *Klinger*, 103 Conn. App. 163, 169, 927 A.2d 373 (2007); *State* v. *Salmond*, 69 Conn. App. 81, 88, 797 A.2d 1113, cert. denied, 260 Conn. 929, 798 A.2d 973 (2002).

B

We turn to the claim preserved by the defendant's exception, which is that the court improperly instructed the jury on consciousness of guilt when there was no evidence conclusively identifying the defendant as the person who approached Riley one month after the shooting. We are not persuaded.

The following additional facts are relevant to our discussion. The court indicated that the defendant had an objection to its jury instructions. Defense counsel placed his sole objection on the record. "I just don't believe that it is appropriate even to have an instruction [of] consciousness of guilt because what the state is saying indicates consciousness of guilt, which is through . . . Riley's testimony. First of all . . . Riley wasn't even able to identify what the person looked like who made the statement. He said that the guy was across the street [and] wasn't close enough to make any type of identification. And when I specifically asked him, do you recognize my client in court on that date,

the members of jury that it was their recollection of the facts, rather than the court's, that was controlling. Second, there was evidence that Tineo and the defendant were friends and "like brothers," and that the two sold drugs together.

he said, no, he doesn't recognize him. So, for conscious-
ness of guilt, he's not even tying it to my client, just to
the word clown. Anybody can say the word clown,
especially if there were rumors around. And so, basi-
cally, what's happening is, with this type of instruction,
you're telling the jury that you can take as proof that
he did it, the fact that there were rumors running
around. And so I believe it goes beyond what the evi-
dence would support. Thank you."

The court instructed the jury as follows: "Next, ladies
and gentlemen, on consciousness of guilt, here the state
offered evidence through the witness, Robert Riley, that
he, Riley, was in the South Marshall Street hallway
when [the victim] was shot. And that on a later date
he was approached by someone identifying himself as
Clown, who expressed concern that he, Riley, was tell-
ing everyone he—that he, Clown, shot [the victim]. *This
was offered by the state as consciousness of guilt evi-
dence for you to consider and giving it whatever
weight—excuse me—giving it whatever weight, if any,
you feel it merits with respect to consciousness of guilt
on the part of the defendant.*

"The law recognizes a concept referred to as con-
sciousness of guilt. When a person is on trial for a
criminal offense, it is proper to show that his conduct
subsequent to the alleged offense may fairly have been
influenced by the criminal act. That is, that the conduct
shows a consciousness of guilt on the part of the
defendant.

"By consciousness of guilt is meant that the conduct
of the defendant may tend to show that he, the defen-
dant, was conscious of his own guilt and that his subse-
quent actions were in accordance with that guilty mind.
*Any such conduct, however, certainly does not raise
any presumption of guilt. It is up to you, ladies and
gentlemen, the jury, as the sole judges of facts, to decide*

*whether the alleged conduct of the defendant was in fact—excuse me—to decide whether the alleged conduct of the defendant—or, I should say, the alleged conduct was in fact the conduct of the defendant. And, if so, whether such conduct reflects consciousness of guilt on the part of the defendant.* You may consider such evidence in your deliberations affording it whatever weight, if any, you feel it merits, all in conformity with these instructions." (Emphasis added.)

"It has been stated numerous times that consciousness of guilt issues are evidentiary and not constitutional in nature. . . . When a challenge to a jury instruction is not of constitutional magnitude, the charge to the jury is to be considered in its entirety, read as a whole, and judged by its total effect rather than by its individual component parts. . . . [T]he test of a court's charge is not whether it is as accurate upon legal principles as the opinions of a court of last resort but whether it fairly presents the case to the jury in such a way that injustice is not done to either party under the established rules of law. . . . As long as [the instructions] are correct in law, adapted to the issues and sufficient for the guidance of the jury . . . we will not view the instructions as improper." (Citation omitted; internal quotation marks omitted.) *State* v. *Hamilton*, 92 Conn. App. 454, 462, 886 A.2d 443 (2005), cert. denied, 277 Conn. 901, 891 A.2d 3 (2006); see also *State* v. *Luster*, 279 Conn. 414, 421, 902 A.2d 636 (2006); *State* v. *Laws*, 36 Conn. App. 401, 411, 651 A.2d 273 (1994) ("[c]onsciousness of guilt instructions, which permit, but do not mandate, an inference of a guilty conscience, are evidentiary rather than constitutional in nature" [internal quotation marks omitted]), cert. denied, 232 Conn. 921, 656 A.2d 671 (1995).[10]

---

[10] In his brief, the defendant argues that "[g]iven that no direct evidence was ever offered in this case and that the only people who testified that the defendant was the perpetrator were jailhouse informants, the effect this instruction had denied him due process and his right to a fair trial." To the extent that the defendant suggests that his constitutional rights were affected

We further note that "[o]ur Supreme Court has . . . made clear that . . . consciousness of guilt [evidence] goes to the question of the defendant's state of mind, a determination which in turn requires an assessment of the defendant's motivations in making the statements at issue. . . . In seeking to introduce evidence of a defendant's consciousness of guilt, [i]t is relevant to show the conduct of an accused . . . as well as any statement made by him subsequent to an alleged criminal act, which may be inferred to have been influenced by the criminal act." (Citation omitted; internal quotation marks omitted.) *State* v. *Schmidt*, 92 Conn. App. 665, 675–76, 886 A.2d 854 (2005), cert. denied, 277 Conn. 908, 894 A.2d 989 (2006).

In the present case, there was evidence before the jury that the defendant was employed as a clown. Additionally, the defendant was known as "Clown" or "Clowny." Furthermore, the jury heard testimony from Rodriguez, a former girlfriend of the victim, that supported an inference that the defendant was the person who approached Riley one month after the shooting. On November 13, 2003, three days before the victim was shot, Rodriguez walked by the defendant, who was standing outside of a store. The defendant made a comment regarding the victim, which Rodriguez overheard. An argument between the two ensued and culminated with the defendant's taking a .22 caliber pistol out of his boot and firing three gunshots into the air.

Later that same evening, as Rodriguez left a friend's house, she was confronted by the defendant and pushed

by the court's instruction on consciousness of guilt, we do not agree. "When reviewing a jury instruction, we are mindful that [r]obing garden variety claims of improper jury instructions concerning evidentiary matters in the majestic garb of constitutional claims does not make such claims constitutional in nature." (Internal quotation marks omitted.) *State* v. *Carty*, 100 Conn. App. 40, 58, 916 A.2d 852, cert. denied, 282 Conn. 917, 925 A.2d 1100 (2007).

against a wall. The defendant was wearing a clown mask and told her to "mind [her] business." After asking if she agreed, the defendant said, "[b]esides that, [the victim] is dead." Rodriguez did not see the defendant with a pistol at this point but assumed he was still carrying it in his boot. She further testified that she did not immediately inform the police because she was afraid of the defendant.

On the basis of this evidence, we cannot conclude that the court abused its discretion by charging the jury on consciousness of guilt. Read as a whole, the overall charge was correct in law and sufficiently provided the jury with guidance to apply properly the facts to the law. The jury was free to draw any reasonable inferences from the testimony and was left to determine whether, in fact, it was the defendant who approached Riley one month after the shooting. We conclude, therefore, that the court did not abuse its discretion by instructing the jury on consciousness of guilt.

IV

The defendant next claims that the court improperly admitted motive evidence. Specifically, he argues that evidence pertaining to Zuckowski's murder, which was offered by the state to show motive, violated his constitutional right to due process as well as the confrontation clause.[11] The state counters that the defendant waived this claim and that it fails to satisfy the second, third,

---

[11] "The sixth amendment to the [United States] constitution guarantees the right of an accused in a criminal prosecution to confront the witnesses against him. . . . The primary interest secured by confrontation is the right to cross-examination . . . and an important function of cross-examination is the exposure of a witness' motivation in testifying. . . . Cross-examination to elicit facts tending to show motive, interest, bias and prejudice is a matter of right and may not be unduly restricted." (Citations omitted; internal quotation marks omitted.) *State* v. *Colton*, 227 Conn. 231, 248–49, 630 A.2d 577 (1993), on appeal after remand, 234 Conn. 683, 663 A.2d 339 (1995), cert. denied, 516 U.S. 1140, 116 S. Ct. 972, 133 L. Ed. 2d 892 (1996).

and fourth prongs of *Golding*. We are not persuaded by the defendant's claim.

The following additional facts are necessary for our discussion. The state called Sheldon as a witness. Sheldon had investigated the murder of Zuckowski, which had occurred just hours prior to the murder of the victim, and considered Tineo as a suspect. During the course of his investigation, Sheldon learned that Tineo "hung out" with the defendant and that the two were friends. Sheldon also discovered that the victim had removed a shotgun from the scene of the Zuckowski shooting.[12] Finally, as a result of his investigative efforts, Sheldon discovered that the defendant was present at the location of the Zuckowski shooting after it had occurred.

At the conclusion of Sheldon's testimony, outside of the presence of the jury, the court and the prosecutor discussed the evidence of the Zuckowski homicide. The state acknowledged that this evidence was introduced for the limited purpose of demonstrating motive. The defendant did not raise any objection, either prior to Sheldon's testimony or during the discussion that occurred outside of the presence of the jury.

After the state rested, the defendant moved for a judgment of acquittal. During argument on this motion, counsel for the defendant indicated that he had not objected to this testimony and instead argued that the state had failed to link the two murders. The court denied the defendant's motion.

On the basis of our review of the record, we conclude that the defendant failed to object to the evidence of the Zuckowski murder and therefore failed to preserve

---

[12] Rodriguez testified that the victim grabbed the shotgun from Zuckowski's body, gave it to her and told her to "put it away" and that he would retrieve it later.

his claim for appellate review.[13] The defendant requests that we review his claim pursuant to *Golding*. In his appellate brief, the defendant offers the bald assertion that "this issue is of a fundamental nature" and that it constitutes a violation of both due process and the confrontation clause. Because the defendant has failed to establish that his claim is of constitutional magnitude, it fails to satisfy the second prong of *Golding*.

Although the defendant references due process and the confrontation clause, his substantive analysis consists of a discussion of *State* v. *Wright*, 198 Conn. 273, 502 A.2d 911 (1986). We conclude that *Wright* does not apply to the facts of the present case. The defendant in *Wright* previously had been convicted of manslaughter, the same offense that was before the jury. Id., 278. In contrast, the defendant in the present case was not even considered a suspect in, much less charged with, the murder of Zuckowski. More importantly, *Wright* was decided on the basis of an improper evidentiary ruling, not on a constitutional basis. The defendant's reliance on *Wright* as authority for his claim of constitutional error is, therefore, misplaced.

With respect to the second prong of *Golding*, "[t]he defendant . . . bears the responsibility of demonstrating that his claim is indeed a violation of a fundamental constitutional right. Patently nonconstitutional claims that are unpreserved at trial do not warrant special consideration simply because they bear a constitutional label." (Internal quotation marks omitted.) *State* v. *Culver*, 97 Conn. App. 332, 347, 904 A.2d 283, cert. denied,

---

[13] The defendant also argues that "[t]his matter is also preserved and reviewable as part of the motion for a new trial . . . ." (Citation omitted.) We do not agree. "A party cannot preserve grounds for reversing a trial court decision by raising them for the first time in a postverdict motion." (Internal quotation marks omitted.) *State* v. *Smith*, 100 Conn. App. 313, 320 n.6, 917 Conn. 1017, cert. denied, 282 Conn. 920, 925 A.2d 1102 (2007); *State* v. *Griffin*, 97 Conn. App. 169, 181 n.5, 903 A.2d 253, cert. denied, 280 Conn. 925, 908 A.2d 1088 (2006).

280 Conn. 935, 909 A.2d 961 (2006). The defendant failed to provide us with any analysis of whether his claim is of constitutional magnitude, and we decline to formulate such an analysis. See *State* v. *Stepney*, 94 Conn. App. 72, 78, 891 A.2d 67, cert. denied, 278 Conn. 911, 899 A.2d 40 (2006). We decline, therefore, to review this claim.

V

The defendant next claims that the court improperly denied his motion for a new trial. Specifically, he argues that the court should have granted the motion on the basis of newly discovered evidence, namely, affidavits from prison inmates.[14] We disagree.

The following additional facts are necessary for our discussion. Following the jury's verdict, the defendant filed a motion for a new trial on May 25, 2005. He raised three grounds in this motion: first, the evidence of Zuckowski's murder by Tineo "was entirely prejudicial with no probative value"; second, the state's questions suggesting that Nicola Campbell, the defendant's girlfriend, was an alibi witness and then undermining her testimony led to the jury's belief that the defendant created a false alibi, thereby causing extreme prejudice; and third, Riley's testimony that he was approached nearly one month after the shooting by an individual who identified himself as "Clown" constituted prejudicial hearsay.

On July 13, 2005, the court held a hearing on the defendant's motion. At that hearing, the defendant orally amended his motion for a new trial and sought relief on the basis of newly discovered evidence. This

---

[14] The defendant also argues that the court improperly denied the motion for a new trial because the state failed to link Zuckowski's murder with the defendant because there was no evidence that the defendant and Tineo were " 'good friends' . . . ." As we previously have noted, the jury heard evidence that the defendant and Tineo "hung out" and were friends. This argument, therefore, is without merit.

new information consisted of a claim of a jailhouse conspiracy to "frame" the defendant for the victim's murder. The defendant believed that the leader of this conspiracy was an inmate named Jonathan Ward, and included Cefus McBean and McClairen, one of the jailhouse informants who had testified against the defendant. The prosecutor argued that the defendant was aware of this information prior to the start of the trial, and, therefore, it did not constitute newly discovered evidence.

The court then inquired whether the proper procedural vehicle to raise this claim was a civil petition for a new trial. Defense counsel responded: "[I]t would be in the interest of justice to let the investigation go forward now to see if the substance of the investigation, if there is, then the remedy would be soon. And that certainly would be just." The court continued the matter until August, 2005.

On August 8, 2005, the court noted that the parties agreed that the motion for a new trial could be amended orally to include a claim of newly discovered evidence. Specifically, the state indicated that it had no objection.[15] The court then proceeded to hear argument on the defendant's motion for a judgment of acquittal and the motion for a new trial. Defense counsel stated that his investigator learned that Ward actively had sought out individuals to testify against the defendant as a result of some personal animosity. The state responded that this information was known to the defendant, who told both his prior and current counsel. The court then denied the defendant's motion for a new trial. The court stated: "To grant a new trial on something that certain

---

[15] The court stated: "We had further discussion of that today in chambers. And as I understand it, in very general terms, the motion can be orally amended to cover the claim being made in the June 6 pleading. Is that correct . . . ?" The prosecutor responded: "Yes. The state has no objection."

inmates have indicated that they heard when they may or may not have been in the presence of others and that has not been confirmed as the comments indicated, at this point I think would be uncalled for. *Now, I don't know where that all stands with reference to the statutory civil petition for a new trial. There are questions that would have to be weighed regarding the materiality of the evidence in the—excuse me—the materiality of the evidence, the admissibility of the evidence and, of course, what has been referred to here, whether or not it is truly newly discovered evidence or evidence which quite reasonably [could] have been uncovered through due diligence. But that's for a separate petition. So, going to the rule involved—and as I understand it, it's rule 52—excuse me—Practice Book § 42-53, the motion for a new trial . . . .*" (Emphasis added.)

We conclude that the trial court lacked the authority to consider the defendant's motion for a new trial on the basis of newly discovered evidence.[16] "*It is well established that to obtain a new trial on the ground of newly discovered evidence, a defendant must bring a petition under Practice Book § 42-55* . . . . Practice Book § 42-55 provides that [a] request for a new trial on the ground of newly discovered evidence shall be called a petition for a new trial and shall be brought in accordance with General Statutes § 52-270. . . . A petition for a new trial properly is instituted by a writ and

---

[16] "Although related, the court's authority to act pursuant to a statute is different from its subject matter jurisdiction. The power of the court to hear and [to] determine, which is implicit in jurisdiction, is not to be confused with the way in which that power must be exercised in order to comply with the terms of the statute." (Internal quotation marks omitted.) *New England Pipe Corp.* v. *Northeast Corridor Foundation*, 271 Conn. 329, 336, 857 A.2d 348 (2004); *Amodio* v. *Amodio*, 247 Conn. 724, 728, 724 A.2d 1084 (1999). Additionally, we noted that "[i]ssues concerning a court's authority to act are issues of law over which our review is plenary." *State* v. *Perez*, 85 Conn. App. 27, 37, 856 A.2d 452, cert. denied, 271 Conn. 933, 859 A.2d 931 (2004).

complaint served on the adverse party; although such an action is collateral to the action in which a new trial is sought, it is by its nature a distinct proceeding. . . . [A] different standard of review applies in these two separate procedures for seeking a new trial. To obtain a new trial through a [Practice Book § 42-55] petition, a defendant must overcome a strict standard including a requirement that the newly discovered evidence be likely to produce a different result in a new trial." (Citations omitted; emphasis added; internal quotation marks omitted.) *State* v. *Rogelstad*, 73 Conn. App. 17, 36, 806 A.2d 1089 (2002).

In *Rogelstad*, the defendant filed a supplemental motion for a new trial but "neglected to serve a writ of summons and complaint in accordance with § 52-270 . . . ." Id., 36–37. We determined that this did not deprive the court of subject matter jurisdiction, but, nevertheless, the court properly dismissed "the defendant's improper motion because it lacked authority to consider it under our rules of practice." Id., 37. We then concluded: "Furthermore, *we express our opinion that the trial court should not exercise its authority in cases such as this where a party fails properly to serve a writ of summons and complaint on the adverse party in accordance with Practice Book § 42-55.*" (Emphasis added.) Id. 39.

More recently, we reiterated the proper method to request a new trial on the basis of newly discovered evidence. "There is a significant difference between Practice Book [§§ 42-53, 42-54 and 42-55]. Practice Book [§ 42-53] is concerned with motions for a new trial based on errors committed during the trial. . . . On the other hand, [§ 42-55] provides: *A request for a new trial on the ground of newly discovered evidence shall be called a petition for a new trial and shall be brought in*

*accordance with [General Statutes § 52-270]. . . .*
Practice Book § 42-53 provides for the granting of a
motion for a new trial in the interests of justice, for
constitutional error or for other materially injurious
error. A motion for a new trial under Practice Book
[§ 42-53] is limited to trial errors, and cannot be based
upon newly discovered evidence. . . . *The defendant
must bring a petition under [§ 42-55] if he wishes to
seek a new trial based upon newly discovered evidence.
. . . A petition for a new trial is instituted properly
by a writ and complaint served on the adverse party;
although such an action is collateral to the action in
which a new trial is sought, it is by its nature a distinct
proceeding. State* v. *Asherman,* 180 Conn. 141, 144, 429
A.2d 810 (1980)." (Citations omitted; emphasis added;
internal quotation marks omitted.) *State* v. *Santaniello,*
96 Conn. App. 646, 672, 902 A.2d 1, cert. denied, 280
Conn. 920, 908 A.2d 545 (2006); see also *Small* v. *State,*
101 Conn. App. 213, 217, 920 A.2d 1024, cert. granted
on other grounds, 283 Conn. 913, 929 A.2d 728 (2007).

We conclude that the defendant's claim of newly dis-
covered evidence was not presented properly to the
court.[17] Simply put, "the distinction between a petition
and a motion is not one of mere nomenclature." *Redd-
ing* v. *Elfire, LLC,* 98 Conn. App. 808, 818, 911 A.2d
1141 (2006). As a result of the defendant's failure to
file a petition for a new trial on the basis of newly
discovered evidence, the trial court lacked the authority
to consider it pursuant to our rules of practice.

[17] The defendant did not present an argument relating to the state's lack
of objection to the oral amendment of his motion for a new trial. Because
it was not briefed by the defendant, we decline to consider it. We note,
however, that we are unaware of any case law or statute authorizing a party
to effectuate a valid waiver of a required procedure necessary for the court's
authority to act. We also recognize that a defendant "has three years from
the judgment within which to bring [a] petition for a new trial on the basis
of newly discovered evidence in accordance with General Statutes § 52-270
as implemented by Practice Book § 42-55. See General Statutes § 52-582."
*State* v. *Rogelstad,* supra, 73 Conn. App. 39 n.13.

## VI

The defendant's final claim is that the court improperly permitted the state to question a witness with respect to the issue of alibi. Specifically, he argues that the state should not have been allowed to refer to Campbell as an alibi witness or to recall and question her with respect to the issue of the defendant's alibi. We are not persuaded.

The following additional facts are necessary for our resolution of this issue. The state called Campbell as a witness. Campbell testified that on November 15, 2003, she was with the defendant in Manchester while he was performing as a clown. Campbell and the defendant returned to the Farmington Avenue area and went to the Zuckowski crime scene. After stopping briefly at his house, Campbell and the defendant went to her house, where they both spent the night and did not leave until 5 p.m. the next day. During her testimony, Campbell acknowledged that she was the defendant's alibi witness.[18]

---

[18] The following colloquy then occurred between Campbell and the prosecutor:

"[The Prosecutor]: And do you recall a police officer speaking with you and serving you a subpoena to appear in court?

"[The Witness]: He served me a subpoena but didn't speak to me.

"[The Prosecutor]: Did you indicate that you were [the defendant's] alibi witness?

"[The Witness]: Yes, sir.

"[The Prosecutor]: Did you have some confusion coming in as a state's witness, since you were his alibi witness?

"[Defense Counsel]: Objection. Relevance.

"The Court: I'll allow it.

"[The Prosecutor]: I claim it, Your Honor.

"The Court: The objection is overruled.

"[The Prosecutor]: Did you indicate that you were somewhat confused being called as a state's witness—

"[The Witness]: Yes, I was.

"[The Prosecutor]:—since you were his alibi witness?

"[The Witness]: Yes."

As he began his cross-examination of Campbell, defense counsel stated, "[g]uess I don't have to call you now, right?" After cross-examination and a brief redirect examination, the state indicated its intention to recall Campbell as a witness. Outside of the presence of the jury, the defendant objected on the ground that Campbell was noticed as an alibi witness by the defendant's former counsel and that present counsel had not intended to call her as an alibi witness.[19] The state then proceeded with its proffer.

Campbell testified that she learned that the murder the defendant was charged with occurred at about 3 a.m. on November 16, 2003, and, at that time, the defendant was with her. Campbell provided this information to the police shortly after the shooting. Following this line of questioning, the defendant reasserted his position that no alibi defense was being presented in this case. The court observed that Campbell had testified, without objection, that she and the defendant had been in her home from about 10 p.m. on November 15, 2003, until 5 p.m. on November 16, 2003, and stated: "So, theoretically, technically, that would be, I suppose, some indication of an alibi." After hearing further argument, both on the record and in chambers, the court ultimately overruled the defendant's objection to recalling Campbell. The court stated: "So, as I indicated in chambers, my feeling is that the jury cannot be left with the evidence as it presently stands. And so, accordingly, I just—the whole issue reference to and so forth, even though it was not the defense's doing through the current attorney, nevertheless it's before the jury, and it cannot, in my view, just be left as it—as it is now, and requires some degree of clarification. And that, I gather,

---

[19] On March 15, 2005, attorney George Flores filed, pursuant to Practice Book § 40-21, a written notice of the intention to offer a defense of alibi. The sole witness on whom the defendant intended to rely to establish an alibi was Campbell.

is the state's purpose at this somewhat late point in time with this witness. But, nevertheless, I will allow it. The objection is overruled." The state then presented Campbell's testimony before the jury.

The defendant has not clearly set forth precisely what claims he is asserting in support of this issue. He appears to argue both constitutional and evidentiary claims. We conclude that, to the extent that a constitutional claim has been raised, we deem it abandoned as a result of an inadequate brief.[20] See *State* v. *Bermudez,* supra, 95 Conn. App. 580 n.2.[21] Furthermore, to the extent he argues that the court improperly permitted the state to refer to Campbell as an "alibi" witness during direct examination, we conclude that it was not preserved for appellate review. We therefore decline to review this claim.

Turning to the claim that, over the defendant's objection, the court improperly allowed the state to recall Campbell as a witness, we conclude that even if we assume, without deciding, that this action was improper, it was harmless. See, e.g., *State* v. *Calderon,* 82 Conn. App. 315, 326, 844 A.2d 866, cert. denied, 270 Conn. 905, 853 A.2d 523, cert. denied, 543 U.S. 982, 125 S. Ct. 487, 160 L. Ed. 2d 361 (2004). "When an improper evidentiary ruling is not constitutional in nature, the

---

[20] The defendant yet again argues that his claim is of constitutional magnitude. Specifically, he argues that both the due process and confrontation clauses were implicated. He does not, however, offer any explanation, or more importantly, analysis, complete with legal citation, as to why these constitutional rights were violated. Simply put, it is not sufficient to offer an unsupported claim of constitutional violations.

[21] The defendant also argues in his brief that "[p]rior counsel withdrew for conflict of interest reasons, not simply because of a monetary or selective reason. Once the conflict of interest arose, prior counsel's motions on this matter should have been deemed moot or, at the least, inadmissible, as his interests when he filed these motions was already in conflict with the interests of the defendant." The defendant offers no legal support for this statement. It is incumbent upon appellate counsel to brief adequately the issue and not to rely on mere declarations alleging error.

defendant bears the burden of demonstrating that the error was harmful. . . . [A] nonconstitutional error is harmless when an appellate court has a fair assurance that the error did not substantially affect the verdict." (Citation omitted; internal quotation marks omitted.) *State* v. *Michael A.*, 99 Conn. App. 251, 270, 913 A.2d 1081 (2007).

As noted, Campbell testified, without objection, that she and the defendant remained in her home from 10 p.m. on November 15, 2003, until 5 p.m. on November 16, 2003. Additionally, the state described her as an alibi witness with no objection from the defendant. These matters, therefore, were admitted into evidence and subject to consideration by the jury. When Campbell was recalled as a witness, the only new testimony pertained to when and what she told the police with respect to the defendant's whereabouts at the time of the murder. The defendant has failed to demonstrate how this substantially affected the verdict. We conclude, therefore, that this claim is without merit.

The judgment is affirmed.

In this opinion the other judges concurred.