******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STATE OF CONNECTICUT *v.* MICHAEL A. YOUNG
(AC 36833)

Alvord, Prescott and Bear, Js.

*Argued September 24—officially released December 1, 2015*

(Appeal from Superior Court, judicial district of Tolland, geographical area number nineteen, Kwak, J.)

*Michael A. Young*, self-represented, the appellant (defendant).

*Glenn W. Falk*, assigned counsel, filed a brief for the appellant (defendant).

*Denise B. Smoker*, senior assistant state's attorney, with whom, on the brief, were *Lisa Herskowitz*, senior assistant state's attorney, *Matthew C. Gedansky*, state's attorney, and *Andrew Reed Durham*, assistant state's attorney, for the appellee (state).

*Opinion*

PRESCOTT, J. The defendant, Michael A. Young, appeals from the judgment of conviction, rendered after a jury trial, of one count of interfering with a police officer in violation of General Statutes § 53a-167a, and one count of assaulting a police officer in violation of General Statutes § 53a-167c (a) (1).[1] On appeal, the defendant's sole claim is that the trial court improperly declined to provide the jury with an adverse inference instruction concerning the state police's failure to preserve evidence, thereby depriving the defendant of his right to due process under the state constitution. See *State* v. *Morales*, 232 Conn. 707, 722–23, 657 A.2d 585 (1995). We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. On May 10, 2011, the state police were dispatched to the defendant's home on a complaint by Jessica Reed that the defendant had assaulted and strangled her. After speaking with Reed, Trooper William Utermarck discovered the defendant sitting in his truck, which was parked in the backyard. Two more police officers arrived at the scene. The officers asked the defendant to exit his vehicle but he refused, revving the engine and uttering profanities. Utermarck requested additional backup and went inside the defendant's residence to speak with Reed again.

After speaking with Reed, Utermarck concluded that the defendant should be arrested. By this time, the defendant had exited his vehicle and sat on the steps of the garage stairwell. When three additional police officers arrived at the scene to provide backup, all six officers approached the defendant. Trooper Timothy Begley informed the defendant that he was under arrest. In response, the defendant stood and walked toward the woods located at the back of the yard, claiming to need to urinate. Begley ordered the defendant to stop and grabbed the defendant's left arm. The defendant attempted to strike Begley, leading Begley and other officers to subdue the defendant by getting him down on the ground. The defendant continued to struggle.

Once handcuffed, the police officers picked the defendant up off the ground and led him to the police cruiser. When the officers attempted to place the defendant in the front passenger seat of the cruiser, the defendant began to kick and struck Trooper John Barrows in the right thigh. After giving the defendant two warnings to stop resisting arrest, Utermarck utilized pepper spray to subdue the defendant. The officers also used duct tape to bind the defendant's feet together.

The jury found the defendant guilty of interfering with a police officer and assaulting a police officer. After a separate jury trial on a part B information, the jury found that the defendant committed the crimes for which he just had been convicted while on release on

bond, thereby subjecting him to a sentence enhancement pursuant to General Statutes § 53a-40b. The court sentenced the defendant to a total effective term of twelve years incarceration, followed by five years of special parole. This appeal followed. Additional facts will be set forth as necessary.

The defendant's sole claim on appeal is that the court improperly declined to instruct the jury that it could draw an adverse inference against the state because of the police's failure to preserve certain exculpatory electronic evidence. The defendant argues that the court, in applying the test set forth in *State* v. *Morales*, supra, 232 Conn. 727,[2] improperly concluded that the unpreserved evidence had little to no evidentiary value to the defendant and that the state police's failure to preserve the evidence was due to inadvertence. Accordingly, the defendant contends that the court should have concluded that his due process rights were violated and that, at the least, an adverse inference instruction was necessary to remedy the violation.

The state argues that the defendant failed to preserve this claim of instructional error for appeal, because he did not file a written request to charge the jury that it could draw an adverse inference from the failure of the state police to preserve evidence, and he did not take exception to the jury charge delivered by the court, as required by Practice Book § 42-16. The state also argues that the defendant is not entitled to have his unpreserved claim reviewed under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), because the defendant waived his claim of instructional error pursuant to *State* v. *Kitchens*, 299 Conn. 447, 468, 10 A.3d 942 (2011). The defendant failed to address the reviewability of his claim in his initial brief and did not respond to the state's argument that his claim is unpreserved, except for filing a reply brief as a self-represented party that briefly mentioned *Golding* review.[3] We agree with the state.

The following additional facts and procedural history are necessary for our discussion. The defendant complains that the state troopers and police officers, not the defendant, were the ones who resorted to violence, utilizing pepper spray and duct taping the defendant's feet and mouth. According to the defendant, the state police disliked him and desired "to teach [him] a lesson." The defendant asserts that there were video cameras on the police cruisers that recorded the police using pepper spray and duct tape to arrest him, as well as video cameras at the police station that recorded images of the defendant's injuries from an alleged assault by the police. On May 25, 2011, the defendant filed a motion to preserve evidence, requesting that the court order the state police to preserve all audiotapes, video recordings, and all other electronic or digital evidence that showed the defendant's arrest, processing,

and lockup. The defendant argued that this evidence was critical to his right to prepare and present a defense.

On June 10, 2011, the Office of the State's Attorney sent a memorandum to the state police, requesting that any evidence referenced in the defendant's motion be preserved. In the same memorandum, the Office of the State's Attorney also requested that all evidence relating to a second case in which the defendant was involved also be preserved. The legal affairs department of the state police received the memorandum and preserved all available audio and digital evidence relating to the second case, but failed to preserve any audio or digital recordings for this case.

On the day the evidentiary portion of the defendant's trial was scheduled to commence, the defendant, who was represented by counsel, filed a motion to dismiss counts two through six of the information on the basis of the state's failure to preserve the electronic evidence. The defendant argued in his motion to dismiss that the state's failure to preserve "the videotapes deprives [him] of his right to present a defense [in] that he will be unable to show the jury the extent of his injuries suffered at the hands of the arresting officers during the course of his arrest." The defendant also alleged that the video recordings from the police cruisers would have shown that the officers' claim that the defendant "engaged in assaultive behavior [was] simply an exaggeration and/or lie." In his motion to dismiss, the defendant expressly stated that he sought dismissal of counts two through six, not an adverse inference instruction, because such an instruction would be insufficient to cure the harm caused by the state's failure to preserve the electronic evidence.

The court immediately conducted a hearing on the defendant's motion to dismiss. During the hearing, defense counsel requested that if the motion to dismiss was denied, the jury be instructed that it could draw an adverse inference from the state's failure to preserve the videotape evidence in deciding whether the police applied duct tape to the defendant's face. The court reserved judgment on the motion to dismiss, and the trial commenced. During the cross-examination of Utermarck, defense counsel again requested an adverse inference instruction after Uternarck denied knowledge of the officers using duct tape on the defendant's mouth. The court withheld judgment on the request for an adverse inference instruction until it ruled on the defendant's motion to dismiss.

The court issued an oral ruling denying the defendant's motion to dismiss. The court concluded that the missing evidence was of "no value" to the defendant and that the state's failure to preserve the evidence was due to inadvertence. Defense counsel took an exception to this ruling and then inquired as to whether "a request

for an adverse inference will also be denied. Is that encompassed in the ruling?" The court responded in the affirmative.

At the end of the state's case-in-chief, the court read a stipulation to the jury, stating that the defendant had filed a motion to preserve evidence and the Office of the State's Attorney had sent to the state police a memorandum requesting the preservation of any electronic evidence. The stipulation further stated that the legal affairs department of the state police received the memorandum, but the police failed to comply with it, because the memorandum listed two case numbers and the police only preserved evidence from one of the cases listed.

Once both parties rested, the court held a charging conference on the record. The court gave counsel copies of the court's proposed jury instructions, and defense counsel requested that he be allowed to bring in a single request to charge the following day, which he had forgotten to bring. The court reviewed the proposed jury instructions page by page with counsel, asking after every page if counsel had any objections. Although defense counsel objected to certain aspects of the court's proposed instructions, renewed his motion for judgment as a matter of law, and asked for an instruction regarding the defendant's choice not to testify, he did not renew his request for an adverse inference instruction. Nor did defense counsel object to the proposed instructions because they lacked an adverse inference instruction.

The next day, before closing arguments, the court held a second charging conference on the record. The court inquired if counsel had received a copy of the proposed instructions and had an opportunity to review them. Defense counsel responded in the affirmative. Again, the court went through the proposed jury instructions page by page, asking for comments and any objections. Defense counsel responded that he had no objections each and every time when asked. The court then asked if any other changes needed to be made, to which defense counsel responded, "I didn't see anything," but then he took an exception to the proposed instructions because they did not include certain requested language that the court appears to have construed to be a request for an instruction on a lesser included offense, with which the defendant was not charged. After a brief recess, the court again reviewed the jury instructions page by page with counsel. At no point did defense counsel make a request for an adverse inference instruction or object to the omission of such an instruction from the proposed charge.

In his closing argument, defense counsel repeatedly discussed the fact that the state failed to preserve the videotape evidence, implying that the state police's actions were intentional and malicious. Following clos-

ing arguments, the court instructed the jury and then asked counsel if they had any exceptions to the instructions. Defense counsel responded: "None, Judge, other—oh. Well, only the one that we previously discussed [concerning the apparent request for an instruction on the lesser included offense]."

It is well settled that, pursuant to Practice Book § 42-16, to preserve for appeal a claim that the court improperly failed to give a jury instruction on a matter, "the defendant *must* [submit] a written request to charge, or take exception to the jury instructions when they are given by the trial court." (Emphasis added; internal quotation marks omitted.) *State* v. *Faria*, 254 Conn. 613, 632, 758 A.2d 348 (2000); see Practice Book § 42-16. "The mere fact that an issue was discussed prior to charging the jury does not preserve the issue for appellate review." *State* v. *Gonzalez*, 106 Conn. App. 238, 245, 941 A.2d 989, cert. denied, 287 Conn. 903, 947 A.2d 343 (2008); accord *State* v. *Darryl W.*, 303 Conn. 353, 370–71, 33 A.3d 239 (2012) (holding that defense counsel's closing argument to jury regarding inoperability as affirmative defense was not sufficient to preserve for appeal claim that court improperly declined to give instruction on that affirmative defense).

In the present case, the defendant did not submit a written request to charge, nor did he take an exception to the charge as given concerning an adverse inference. Rather, defense counsel indicated on the record that there was no objection to the instructions and did not request or provide an adverse inference instruction. It is not sufficient for preservation of this claim that the defendant requested an adverse inference instruction during the hearing on the motion to dismiss and during cross-examination of a state's witness. Nor does it matter that the defendant made arguments in support of an adverse inference during closing argument. To preserve his claim of instructional error, the defendant was required to either submit a written request to charge or take exception to the jury instructions after they were given by the court. The defendant did neither. Therefore, we conclude that the defendant failed to preserve the issue of instructional error for our review.

Even though the defendant's unpreserved claim is arguably of constitutional magnitude; see *State* v. *Johnson*, 288 Conn. 236, 275–76, 951 A.2d 1257 (2008) ("denying or foreclosing the defendant's access to . . . evidence may constitute a due process violation [including] . . . the failure of the police to preserve evidence that might be useful to the accused" [citations omitted; emphasis omitted; internal quotation marks omitted]); his claim is not entitled to review pursuant to *State* v. *Golding*, supra, 213 Conn. 239–40,[4] because the defendant waived his claim of instructional error. "It is well established in Connecticut that unpreserved claims of improper jury instructions are reviewable under *Gold-*

*ing* unless they have been induced or implicitly waived." *State* v. *Kitchens*, supra, 299 Conn. 468.[5] A defendant waives his constitutional right to challenge the jury instructions on direct appeal if "the trial court provides counsel with a copy of the proposed jury instructions, allows a meaningful opportunity for their review, solicits comments from counsel regarding changes or modifications and counsel affirmatively accepts the instructions proposed or given." Id., 482–83.

In the present case, the court provided counsel with a copy of the proposed jury instructions at the first charging conference on August 29, 2013. The court reviewed the proposed instructions page by page with counsel, soliciting comments and objections after each and every page. Defense counsel then had the opportunity overnight to review the proposed instructions on their own. The next day, the court again reviewed the proposed instructions page by page with counsel, not just once, but twice. Every time the court went through the proposed instructions with counsel, it solicited comments regarding modifications and objections. Thus, the court provided counsel with the proposed jury instructions and a meaningful opportunity to review them.

Additionally, not only did the court solicit comments from counsel and afforded counsel multiple opportunities to object to the proposed instructions, but defense counsel affirmatively accepted the proposed instructions at the second charging conference and again after the instructions were read to the jury. At no time did the defendant file a written request for an adverse inference instruction, request an adverse inference instruction during the charging conferences, or object to or take an exception to the instructions for failing to include an adverse inference instruction. Although the defendant asked generally for an adverse inference instruction during trial, he never submitted a specific written instruction concerning an adverse inference. Because the defendant never took such action, we do not know what specific language concerning an adverse inference the defendant was requesting to be included in the charge. Without knowing the precise language in the adverse inference instruction that the defendant was seeking, this court cannot decide if the trial court abused its discretion by denying that request. We do know, however, that defense counsel affirmatively accepted the charge as given after being afforded an opportunity to review the instructions and to object to them. Therefore, pursuant to *Kitchens*, the defendant waived his claim of instructional error.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] After a jury trial on part B of the information, the defendant also was convicted of having committed the offenses while released on bond in violation of General Statutes § 53a-40b.

The jury acquitted the defendant of five other charges: one count of assault

in the third degree in violation of General Statutes § 53a-61; one count of assault of public safety or emergency medical personnel in violation of General Statutes § 53a-167c (a) (5); one count of threatening in the second degree in violation of General Statutes § 53a-62 (a) (2); one count of reckless endangerment in the first degree in violation of General Statutes § 53a-63; and one count of strangulation in the second degree in violation of General Statutes § 53a-64bb.

[2] In *State* v. *Morales*, supra, 232 Conn. 727, our Supreme Court adopted the balancing test from *State* v. *Asherman*, 193 Conn. 695, 724, 478 A.2d 227 (1984), for determining if the defendant has been deprived of his due process rights under the state constitution. "[T]he trial court must balance the totality of the circumstances surrounding the missing evidence, including the following factors: the materiality of the missing evidence, the likelihood of mistaken interpretation of it by witnesses or the jury, the reason for its nonavailability to the defense and the prejudice to the defendant caused by the unavailability of the evidence." (Internal quotation marks omitted.) *State* v. *Morales*, supra, 727.

[3] Although the defendant initially was represented on appeal by assigned counsel, who filed the defendant's appellant brief, the defendant subsequently dismissed counsel, filed his own reply brief, and elected to proceed as a self-represented party.

[4] "Under *Golding*, a defendant can prevail on a claim of constitutional error not preserved at trial claim only if all of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation . . . exists and . . . deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. In the absence of any one of these conditions, the defendant's claim will fail." (Internal quotation marks omitted.) *State* v. *Dixon*, 318 Conn. 495, 511, 122 A.3d 542 (2015).

[5] Although we note that our Supreme Court recently granted certification to decide whether *Kitchens* should be overruled in *State* v. *Herring*, 151 Conn. App. 154, 94 A.3d 688, cert. granted, 314 Conn. 914, 100 A.3d 849 (2014), the holding in *Kitchens* presently remains binding upon this court.

———————————————