STATE OF CONNECTICUT *v.* THADDEUS LAVALLEE
(AC 27207)

Flynn, C. J., and McLachlan and Lavine, Js.

Argued February 15—officially released June 5, 2007

*Katharine S. Goodbody*, special public defender, for the appellant (defendant).

*Ronald G. Weller*, senior assistant state's attorney, with whom, on the brief, were *Kevin T. Kane*, chief state's attorney, and *John H. Malone*, senior assistant state's attorney, for the appellee (state).

*Opinion*

FLYNN, C. J. The defendant, Thaddeus LaVallee, appeals from the judgments of conviction, rendered

after a jury trial, of reckless endangerment in the first degree in violation of General Statutes § 53a-63 (a), attempt to commit assault in the second degree in violation of General Statutes §§ 53a-49 (a) (2), and 53a-60 (a) (2) and reckless driving in violation of General Statutes § 14-222. On appeal, the defendant claims that (1) the trial court improperly refused to admit the summons into evidence as a full exhibit and (2) the prosecutor engaged in impropriety[1] that deprived him of a fair trial. We affirm the judgments of the trial court.

The jury reasonably could have found the following facts. On February 25, 2002, at approximately 9 p.m., Michael Richey, a truck driver, was driving the cab portion of his tractor trailer on Route 190 in Enfield. Richey was on his way to pick up a trailer from a company in Suffield. It was when Richey reached Enfield that the defendant commenced the first of at least twelve aggressive actions using his motor vehicle. As Richey started to cross a bridge in Enfield, the defendant, who was driving a late model Cadillac, passed Richey on the right and cut in front of his truck, forcing Richey to swerve his truck into the right lane to avoid a collision. Richey continued traveling in the right lane. The defendant then passed Richey on the left side, cutting him off and forcing Richey's truck to hit the curb, and the defendant sped away until he came to a stop in a left turn lane at a traffic light. After approaching the traffic light, Richey turned right onto Route 159.

---

[1] In accordance with the directive of our Supreme Court in *State* v. *Fauci*, 282 Conn. 23, 917 A.2d 978 (2007), when reviewing a prosecutor's allegedly improper statements, we now use the term "prosecutorial impropriety" rather than the traditional term "prosecutorial misconduct." Id., 26 n.2. Recognizing that labeling "what is merely improper as misconduct is a harsh result that brands a prosecutor with a mark of malfeasance when his or her actions may be a harmless and honest mistake," our Supreme Court determined that the term "prosecutorial impropriety" is more appropriate. Id. The usage of the new terminology, however, does not change the analysis. Id.

Instead of turning left, the defendant suddenly turned right, passed Richey and again cut him off. A few minutes later, Richey proceeded on Route 159, but he was forced to slam on the brakes when he encountered the defendant's motor vehicle that was stopped in the middle of the road without its lights on. The defendant sped away until he reached the traffic light at the intersection of Route 190. As Richey approached the traffic light, he put on his left turn signal, intending to turn onto Route 190. After the light turned green, the defendant drove into the intersection, stopped, turned left and blocked Richey from being able to make the left turn onto Route 190. As a result, Richey was forced to continue on Route 159.

Shortly after Richey notified the police of the defendant's conduct, the defendant again passed him on the left and cut him off, causing Richey to drive onto an abutting lawn. The defendant proceeded to stop in the road in front of Richey. Richey decided to stop his truck and wait a few minutes before continuing onto Hickory Street. Once Richey was driving on Hickory Street, the defendant again stopped several times in front of Richey. Richey then turned left onto the southbound lane of Route 75. Thereafter, the defendant approached Richey, driving north in the southbound lane of Route 75. After viewing the defendant heading straight toward him, Richey immediately slammed on his brakes. At the last moment, the defendant swerved his vehicle into the northbound lane in order to avoid a collision. The defendant, however, then made a U-turn and again headed toward Richey. The defendant passed Richey, cut him off and eventually drove into a driveway. When Richey's truck approached that driveway, the defendant backed out of the driveway in order to block Richey, forcing Richey to stop his truck. Once Richey again was traveling on Route 75, the defendant attempted to strike

Richey's truck head on, causing Richey to drive onto a grassy area.

Officer Shane Nelson of the Suffield police department was dispatched to the area of Routes 159, 190 and 75 and conducted an investigation. When Nelson arrived, however, the defendant already had driven away, and Nelson was unable to locate the defendant that night. Richey later provided a statement on March 5, 2002. After Richey informed Nelson of the defendant's license plate number, Nelson was able to identify the defendant as the owner of the Cadillac. On March 16, 2002, Nelson contacted the defendant, inquiring about the events of February 25, 2002. Initially, the defendant informed Nelson that he did not recall what had transpired on the night of February 25, 2002, but he later indicated that he may have been present in the Cadillac that night. The defendant later stated that he may want to file a complaint against Richey. The defendant, however, decided against filing a complaint after Nelson informed him that the statement form contained an advisory of the penalties of filing a false statement. Approximately one month after the incident, Nelson issued a summons to the defendant via certified mail, which listed the misdemeanor offense of reckless driving.

On April 1, 2002, the defendant was charged with reckless driving under docket number MV-02-296326. Subsequently, the defendant was charged in a June 11, 2002 short form substitute information with reckless driving, reckless endangerment in the first degree and attempt to commit assault in the second degree. The charges of reckless endangerment in the first degree and attempt to commit assault in the second degree then were assigned to docket number CR-02-124074-S, and the reckless driving charge remained on the motor vehicle docket. A long form substitute information was filed on October 4, 2002. Following a trial, the jury

found the defendant guilty of the three charges.[2] Thereafter, the court sentenced the defendant to a total effective term of five years incarceration, suspended after three years, with five years of probation. Additional facts will be set forth where necessary. This appeal followed.

I

The defendant first claims that the court abused its discretion when it refused to admit into evidence as a full exhibit the summons issued by Nelson. The defendant argues that the court improperly concluded that its admission would cause confusion. We disagree and conclude that this claim lacks merit.

We begin by setting forth our well established standard of review governing evidentiary claims. "The trial court's ruling on evidentiary matters will be overturned only upon a showing of a clear abuse of the court's discretion. . . . We will make every reasonable presumption in favor of upholding the trial court's ruling, and only upset it for a manifest abuse of discretion." (Citations omitted; internal quotation marks omitted.) *State* v. *Coleman*, 241 Conn. 784, 789, 699 A.2d 91 (1997). "When an improper evidentiary ruling is not constitutional in nature, the defendant bears the burden of demonstrating that the error was harmful. . . . [A] nonconstitutional error is harmless when an appellate court has a fair assurance that the error did not substantially affect the verdict." (Citation omitted; internal quotation marks omitted.) *State* v. *Ritrovato*, 280 Conn. 36, 56, 905 A.2d 1079 (2006).

Certain additional facts are relevant to the defendant's claim. During cross-examination, defense counsel questioned Nelson about the contents of the

---

[2] The defendant also was charged with violation of probation pursuant to General Statutes § 53a-32. After the jury found the defendant guilty of the charges stemming from the February 25, 2002 incident, the court made a finding on October 10, 2002, that the defendant had violated his probation.

summons that he had issued to the defendant approximately one month after the incident. In response, Nelson testified that the summons was issued for the offense of reckless driving and did not include any other charges. Despite Nelson's testimony indicating that reckless driving was the sole offense listed on the summons, defense counsel then sought to have the summons admitted as a full exhibit. Although the court did not permit the introduction of the summons as a full exhibit, the court allowed defense counsel to question Nelson about the charge listed on the summons.[3]

In the present case, the defendant's claim that the court made an improper evidentiary ruling requires little discussion because even if we were to assume, without deciding, that the court improperly had excluded the summons, the defendant has failed to demonstrate how the court's ruling was harmful. In adducing testimony from Nelson, the defendant was able to show that the more serious charges of reckless endangerment in the first degree and attempt to commit assault in the second degree were not listed on the summons. In his appellate brief, the defendant makes nothing more than a conclusory statement that the exclusion of the summons was harmful. Absent any analysis as to how the ruling harmed him, we are unable to conclude that the exclusion of this evidence was an abuse of discretion.[4]

---

[3] Specifically, the court ruled that the admission of the summons as a full exhibit would confuse the jury about who is the ultimate prosecuting authority. We note that although police officers in Connecticut make arrests, it is the prosecutorial authority that decides "for what charges [citizens] are to be held accountable." *Massameno* v. *Statewide Grievance Committee*, 234 Conn. 539, 575, 663 A.2d 317 (1995).

[4] Further, we note that the proffered evidence was cumulative of testimony that already had been admitted. Immediately prior to defense counsel's attempt to have the summons admitted as a full exhibit, the jury heard testimony from Nelson. His testimony indicated that only the charge of reckless driving was listed on the summons. Therefore, this information already was before the jury.

Accordingly, we conclude that the defendant's claim lacks merit.

## II

The defendant next claims that he was denied the right to a fair trial as a result of prosecutorial impropriety during closing arguments in which the prosecutor improperly alluded to facts that were not in evidence and improperly bolstered Richey's credibility. Although we agree with the defendant that the challenged remark was improper, we conclude that the impropriety did not deprive the defendant of his constitutional right to a fair trial.

The defendant acknowledges that he did not object to the alleged instance of prosecutorial impropriety at trial. We, nevertheless, review his claim because with claims of prosecutorial impropriety, "it is unnecessary for the defendant to seek to prevail under the specific requirements of *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), and, similarly, it is unnecessary for a reviewing court to apply the four-pronged *Golding* test." (Internal quotation marks omitted.) *State* v. *Lopez*, 280 Conn. 779, 798–99, 911 A.2d 1099 (2007).

"In analyzing claims of prosecutorial impropriety, we engage in a two step analytical process. . . . The two steps are separate and distinct. . . . We first examine whether prosecutorial impropriety occurred. . . . Second, if an impropriety exists, we then examine whether it deprived the defendant of his due process right to a fair trial." (Citations omitted.) *State* v. *Fauci*, 282 Conn. 23, 32, 917 A.2d 978 (2007). "Only if we conclude that prosecutorial [impropriety] has occurred do we then determine whether the defendant was deprived of his due process right to a fair trial." *State* v. *Schiavo*, 93 Conn. App. 290, 302, 888 A.2d 1115, cert. denied, 277 Conn. 923, 895 A.2d 797 (2006).

Where prosecutorial impropriety is found to have occurred, our Supreme Court in *State* v. *Williams*, 204 Conn. 523, 540, 529 A.2d 653 (1987), has enumerated six factors to guide the determination of whether the entire trial was so infected with unfairness as to deprive the defendant of a fair trial. These factors include the extent to which the impropriety was invited by defense conduct, the severity and the frequency of the impropriety, the centrality of the impropriety to the critical issues in the case and the strength of the curative measures adopted and of the state's case. Id. In evaluating these six *Williams* factors, we are constrained by the precedent of our Supreme Court, which has held that prosecutorial impropriety far more egregious than that here did not deprive the defendants of a fair trial. See *State* v. *Thompson*, 266 Conn. 440, 479–80, 832 A.2d 626 (2003); see also *State* v. *Dews*, 87 Conn. App. 63, 77–78, 864 A.2d 59, cert. denied, 274 Conn. 901, 876 A.2d 13 (2005).

In the present case, the challenged remark occurred during the prosecutor's closing argument. "While the privilege of counsel in addressing the jury should not be too closely narrowed or unduly hampered, it must never be used as a license to state, or to comment upon, or even to suggest an inference from, facts not in evidence, or to present matters which the jury [has] no right to consider." (Internal quotation marks omitted.) *State* v. *Sells*, 82 Conn. App. 332, 340, 844 A.2d 235, cert. denied, 270 Conn. 911, 853 A.2d 529 (2004). The defendant takes issue with the prosecutor's remark that "Officer Nelson testified the way he gave the statement was to warn everyone of the penalties of a false statement. Mr. Richey had a few days to think about it, went back, was presumably given that warning and made the statement." The defendant argues that this remark was improper because there was no evidence that "Nelson [had] warned [Richey] of [the] penalties

or that this was his normal mode of operation." The state argues that there was evidence that Richey had given a written statement to the police, and, therefore, the prosecutor's remark amounted to a request that the jury draw an inference that Richey had been warned about the penalties of providing a false statement via the advisory that is contained on the statement forms. We agree with the defendant that this statement was improper.

At trial, Nelson asserted that the statement forms contained an advisory that the "statement has to be truthful under penalty of filing a false statement"; however, Nelson did not testify, as the prosecutor argued, that he expressly told everyone who provided a statement about the penalties of filing a false statement. Furthermore, there is no testimonial or documentary evidence indicating that Richey had provided a *written* statement containing such an advisory. We conclude that it would not be a reasonable inference from the facts in evidence that Nelson had warned Richey about the penalties of filing a false statement, and, therefore, we conclude that the prosecutor's remark was improper.

On the basis of our review of the improper comment in light of the entire trial, however, we further conclude that the remark did not deprive the defendant of his due process right to a fair trial. The impermissible inference that the prosecutor sought to have the jury draw was that Richey and the defendant both were warned about the penalties of providing a false statement but that only the defendant decided not to file a statement to press charges. The defendant or his counsel did not invite the prosecutor to importune the jury to infer a fact from another fact that was not in evidence. Therefore, the comment could not be said to have been invited. However, the comment was not condemnatory and, therefore, not severe. No objection was made at

the time of trial, and no specific curative instruction was sought or given. Although credibility was a central issue, as the state concedes, there also was evidence before the jury concerning how the defendant changed his story several times when questioned by the police about the events of February 25, 2002, thus weakening his case. Moreover, the prosecutor's remark was an isolated comment, which was mitigated by the judge's general instruction to the jury that its recollection of the evidence controlled.[5] Given the precedents, which bind us, the isolated nature of the comment and the court's instruction, we are not persuaded that the prosecutor's improper remark deprived the defendant of his due process right to a fair trial.

The judgments are affirmed.

In this opinion the other judges concurred.

---

[5] Specifically, the court stated: "In reaching your verdict, you should consider all of the testimony and exhibits received into evidence. Certain things are not evidence, and you may not consider them in deciding what the facts are. These include arguments and statements by the lawyers. The lawyers are not witnesses. What they have said in their closing arguments is intended to help you interpret the evidence, but it is not evidence. If the facts you remember are different from the way the lawyers have stated them, your memory of them controls."