******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# STATE OF CONNECTICUT *v.* YOON CHUL SHIN
## (AC 40385)

Keller, Bright and Beach, Js.

*Syllabus*

Convicted of the crimes of interfering with an officer and disorderly conduct, the defendant appealed to this court, claiming, inter alia, that the evidence was insufficient to support his conviction. Police officers, who had been providing security at an event for Jewish athletes, were alerted that the defendant was driving across the country to various synagogues, and had posted a video on the Internet in which he stated that he was in the process of desecrating Jewish temples and was on a mission to rid the planet of Jewish people. When the police observed the defendant's parked car across the street from a Jewish temple, they approached and asked him for his driver's license and vehicle registration, which the defendant refused to provide. The police observed metal devices with wire attached to them inside the car, which the defendant told them he used to desecrate the temples. After the defendant refused the officers' requests to step out of his car, the police extricated him from the car and attempted to place him in a police vehicle. The defendant resisted the officers' efforts to place him in the police vehicle and screamed anti-Semitic comments loud enough to be heard by a crowd of bystanders nearby. Police officers who had watched the defendant's Internet video testified at trial about its contents. The trial court also declined, for lack of relevance, the defendant's request to issue a subpoena to a rabbi from out of state whom the defendant claimed would testify that he had a cordial visit with the defendant and that the defendant was doing no harm while traveling around the country. *Held*:

1. The defendant's claim that his arrest and seizure by the police were illegal was unavailing; even if the defendant's arrest were illegal, it could not serve as the basis for overturning his conviction, as the defendant did not argue that evidence was obtained or used against him at trial as a result of his purported illegal arrest, and his claim that certain evidence that the police seized from his car was invalid could not be reviewed, as it was raised for the first time in his reply brief, the defendant never moved to suppress the evidence, and the trial court did not make any factual findings or legal conclusions regarding whether any evidence was illegally seized.

2. The defendant could not prevail on his claim that the evidence was insufficient to support his conviction because the police officers' testimony was fabricated; the jury was free to credit or discredit the testimony of the officers, it heard testimony from the defendant that the police officers' testimony was false, and it was free to weigh the conflicting testimony and to assess the credibility of the various witnesses, and there was a reasonable view of the evidence that supported the jury's guilty verdict.

3. This court declined to review the defendant's unpreserved claim that the trial court improperly admitted testimony from police officers about statements the defendant had made in an Internet video that he had posted; the trial court made clear to the parties that it was not going to make any ruling in advance of the officers' testimony and that it would, instead, consider any objections as they were raised during the presentation of the evidence, the defendant did not object to any of the state's questions or move to strike any testimony, he did not argue that the officers' testimony should be excluded or stricken but, rather, claimed that other videos should have been admitted to mitigate the prejudicial effects of the officers' testimony, and, therefore, the defendant failed to secure from the court a finalized, specific ruling as to any of the testimony elicited at trial.

4. The trial court did not abuse its discretion when it denied the defendant's request to excuse a prospective juror for cause during voir dire; the prospective juror repeatedly stated that she was able to serve as an impartial juror, and nowhere in the record was there an indication that she could not judge the defendant impartially, nor was there any

indication in the record that her demeanor, which the court was able to observe, suggested that she could not be a fair and impartial juror.

5. The defendant could not prevail on his unpreserved claim that the trial court violated his state constitutional right to compulsory process when it denied his request to issue a subpoena to a rabbi from out of state; it was apparent that the testimony the defendant sought to illicit from the rabbi was irrelevant and inadmissible, as testimony regarding one peaceful interaction that the rabbi had with the defendant or that the defendant was not doing any harm on his spiritual journey was not relevant to the charges for which the defendant was on trial.

6. The defendant's claim that the trial court improperly found him incompetent to stand trial before it later determined that he was competent to stand trial was not reviewable, the defendant having failed to brief the claim adequately; the defendant's brief contained no analysis as to how the court made the initial determination that he was incompetent to stand trial, and the defendant did not analyze the evidence of competency or attempt to undermine the court's finding by reference to relevant law.

7. The defendant's claim that the trial court violated his constitutional right to travel when it imposed as a term of his conditional discharge a special condition that he stay out of Connecticut was dismissed as moot, as that condition had expired prior to the resolution of the defendant's appeal; moreover, the defendant's assertion that his claim was not moot because it fell within the collateral consequences exception to the mootness doctrine was unavailing, as he only generally asserted that his sentencing would have lasting consequences and did not demonstrate how an expired restriction on his ability to enter the state would create a reasonable possibility that prejudicial collateral consequences will occur, and the defendant's claim that the condition banning him from the state has led to adverse employment consequences because he has been denied employment after failing background checks was mere conjecture, as he failed to allege or to demonstrate that the condition led to his adverse employment consequences.

Argued April 10—officially released October 1, 2019

*Procedural History*

Substitute information charging the defendant with three counts of the crime of interfering with an officer and with the crime of disorderly conduct, brought to the Superior Court in the judicial district of Stamford-Norwalk, geographical area number one, and tried to the jury before *Blawie, J.*; verdict and judgment of guilty, from which the defendant appealed to this court. *Appeal dismissed in part; affirmed.*

*Yoon Chul Shin*, self-represented, the appellant (defendant).

*Sarah Hanna*, assistant state's attorney, with whom, on the brief, were *Richard J. Colangelo, Jr.*, state's attorney, and *Daniel E. Cummings*, deputy assistant state's attorney, for the appellee (state).

*Opinion*

KELLER, J. The self-represented defendant, Yoon Chul Shin, appeals from the judgment of conviction, rendered by the trial court following a jury trial, of three counts of interfering with an officer in violation of General Statutes § 53a-167a and one count of disorderly conduct in violation of General Statutes § 53a-182. On appeal, the defendant raises a plethora of claims. Primarily, he claims that (1) he was illegally seized by the police because he was arrested without probable cause or an arrest warrant; (2) the evidence was insufficient to find him guilty of any of the crimes with which he was charged because testimony elicited from police officers at trial was fabricated; (3) the court improperly admitted testimony from police officers about statements the defendant made in a video he posted on the Internet; (4) the court abused its discretion in denying his request to excuse a prospective juror for cause during voir dire; (5) the court violated his constitutional right to compulsory process by declining to issue a subpoena; (6) the court improperly found him incompetent to stand trial but restorable before later determining that he was competent;[1] and (7) the court improperly imposed on him as part of his conditional discharge a special condition that he stay out of the state of Connecticut.[2] We dismiss the last claim as moot and, with respect to the remaining claims, affirm the judgment of the trial court.

On the basis of the evidence adduced at trial, the jury reasonably could have found the following facts. In August, 2016, the Maccabi Games, an athletic event for Jewish athletes, were held over a span of four days at West Hill High School (school) in Stamford. On August 10, 2016, the Stamford Police Department (department) received from the Stamford Jewish Community Center's internal security staff a memorandum alerting it that a suspicious individual from California, later identified as the defendant, was driving a blue Toyota Celica covered in white painted writing across the country to various synagogues and that he may be seen around the school during the Maccabi Games. Upon receipt of the memorandum, the department forwarded it to the Federal Bureau of Investigation's (FBI) joint terrorism task force, which, in turn, sent an email to the department stating that it had opened an investigation of the defendant in Cincinnati, Ohio, and that it found a video posted on the Internet by the defendant in which he stated that he was in the process of desecrating Jewish temples and that he was "on a mission to rid the Jew . . . of the planet." This information was disseminated to the Stamford police officers assigned to provide security at the Maccabi Games on August 11, 2016.

On the morning of August 11, 2016, Officer Michael Montero alerted other officers via radio that he had

seen the defendant's vehicle passing the school and continuing north on Roxbury Road. After receiving the radio call, Lieutenant Christopher Baker and Sergeant Steven Perrotta drove north on Roxbury Road, where they eventually observed the defendant's parked vehicle blocking a residential driveway directly across from Temple Beth El, a Jewish temple. Lieutenant Baker and Sergeant Perrotta turned on their vehicle's overhead lights and pulled behind the defendant's vehicle. When Lieutenant Baker approached the defendant's vehicle, he noticed that the rear window was covered in tin foil, making it impossible to see who or what was in the vehicle. When Lieutenant Baker asked the defendant for his driver's license and vehicle registration, the defendant did not comply with his request. The defendant also was agitated and repeatedly stated that he was only praying and that the police had no right to stop him. Lieutenant Baker observed on the dashboard of the defendant's car two pyramid shaped metal devices, one of which had 12 gauge wire sticking out of it. When Lieutenant Baker asked about the objects, the defendant stated that they were what he used to desecrate the temples.

Lieutenant Baker subsequently asked the defendant several times to turn off his vehicle's motor, but he refused. Sergeant Perrotta then reached into the vehicle and shut it off. Lieutenant Baker on several occasions ordered the defendant out of his vehicle, but he repeatedly refused. Due to the defendant's noncompliance, Lieutenant Baker opened the defendant's door and extricated him from the vehicle. Sergeant Felix Martinez, who had arrived to assist Lieutenant Baker and Sergeant Perrotta, attempted to escort the defendant to the back of his police vehicle. As he was being placed in the back of the police vehicle, the defendant was screaming anti-Semitic comments loud enough to be overheard by a group of civilians who had gathered near the scene. Sergeant Martinez and Sergeant Perrotta attempted to place the defendant in the police car, but the defendant braced himself against the vehicle to prevent himself from being placed into the car. Eventually, Sergeant Martinez and Sergeant Perrotta were able to physically push the defendant into the police car.

On the basis of the information provided by the FBI, the video made by the defendant, the defendant's behavior while interacting with the police officers, and the pyramids on the dashboard of the defendant's car, Lieutenant Baker requested the presence of a bomb sniffing dog to ensure that the defendant's car did not contain any explosives. Upon arrival, the bomb sniffing dog indicated that explosives were either present or had been present.[3] Accordingly, a safety perimeter around the defendant's vehicle was established while it was being searched. As a precaution, children who had been playing outside at a nearby school were evacuated from the area. While the defendant's vehicle was being

searched for explosives, the defendant was twice taken out of Sergeant Martinez' police car so that Sergeant Erin Trew could question him about the pyramid devices on his dashboard. During his second conversation with Sergeant Trew, the defendant again began to scream obscenities and anti-Semitic comments audible to a crowd of bystanders. The defendant then was put in handcuffs and placed under arrest. When Sergeant Martinez again tried to place the defendant back in his police vehicle, the defendant began yelling and screaming while he resisted attempts to be placed in the vehicle. Due to the defendant's resistance, Sergeant Trew needed to go to the other side of the vehicle and pull the defendant into the car. The defendant was thereafter transported to the police station.

The defendant originally was charged with breach of the peace in the second degree in violation of General Statutes § 53a-181 and inciting injury to persons or property in violation of General Statutes § 53a-179a. [See file] In a substitute information filed before trial, the defendant was charged with three counts of interfering with an officer in violation of § 53a-167a[4] and one count of disorderly conduct in violation of § 53a-182.[5]

After a jury trial, in which the defendant elected to represent himself,[6] the defendant was found guilty on all counts. The court rendered a judgment of conviction in accordance with the jury's verdict and imposed a total effective sentence of three years of incarceration, execution suspended after seven months, with two years of conditional discharge.[7] This appeal followed. Additional facts will be set forth as necessary.

I

The defendant first claims that he was illegally seized by the police because he was arrested without probable cause or an arrest warrant. The state argues that, even if the defendant's arrest was illegal, it cannot serve as the basis to overturn the defendant's conviction. We agree with the state.

Our Supreme Court has stated that "[t]he relationship between an illegal arrest and a subsequent prosecution under federal constitutional law is well settled. In an unbroken line of cases dating back to 1886, the federal rule has been that an illegal arrest will not bar a subsequent prosecution or void a resulting conviction." (Internal quotation marks omitted.) *State* v. *Bagnaschi*, 180 Conn. App. 835, 857, 184 A.3d 1234, cert. denied, 329 Conn. 912, 186 A.3d 1170 (2018). "[E]ven when an arrest is made without probable cause, a subsequent conviction is not void if no evidence was obtained as the result of the illegal arrest." *State* v. *Silano*, 96 Conn. App. 341, 344, 900 A.2d 540, cert. denied, 280 Conn. 911, 908 A.2d 542 (2006).

In the present case, the defendant does not argue in his principal appellate brief that evidence was obtained

or used against him at trial as a result of his purported illegal arrest. Rather, his argument merely centers on the assertion that he was illegally seized. As a result, even if his arrest was illegal, it cannot serve as the basis for overturning his conviction. Therefore, the defendant's claim fails.

Moreover, the defendant in his reply brief claims for the first time that photographs of his vehicle and the pyramids on his dashboard, police officer testimony adduced at trial, and police reports are "invalid" due to his illegal seizure. It is, however, a "well established principle that arguments cannot be raised for the first time in a reply brief." (Internal quotation marks omitted.) *State* v. *Myers*, 178 Conn. App. 102, 106, 174 A.3d 197 (2017). Furthermore, the defendant never moved to suppress this evidence. Accordingly, the record is inadequate for appellate review because the court did not make any factual findings or legal conclusions regarding whether any evidence was illegally seized.[8] See, e.g, *State* v. *Collins*, 124 Conn. App. 249, 256–57, 5 A.3d 492 (record inadequate for review where defendant failed to file motion to suppress and no evidentiary hearing held), cert. denied, 299 Conn. 906, 10 A.3d 523 (2010); *State* v. *Necaise*, 97 Conn. App. 214, 220, 904 A.2d 245 (declining to review claim regarding out-of-court identification due to inadequate record where defendant failed to file motion to suppress and to object at trial, and no evidentiary hearing held), cert. denied, 280 Conn. 942, 912 A.2d 478 (2006).

II

The defendant next argues that the evidence was insufficient to find him guilty of the offenses with which he was charged because the police officers' testimony adduced at trial was fabricated.[9] We disagree.

We begin by briefly setting forth the standard of review for claims of evidentiary insufficiency in a criminal appeal. "In reviewing the sufficiency of the evidence to support a criminal conviction we apply a two-part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the [finder of fact] reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt. . . .

"We note that the [finder of fact] must find every element proven beyond a reasonable doubt in order to find the defendant guilty of the charged offense, [but] each of the basic and inferred facts underlying those conclusions need not be proved beyond a reasonable doubt. . . . If it is reasonable and logical for the [finder of fact] to conclude that a basic fact or an inferred fact is true, the [finder of fact] is permitted to consider the fact proven and may consider it in combination with

other proven facts in determining whether the cumulative effect of all the evidence proves the defendant guilty of all the elements of the crime charged beyond a reasonable doubt. . . .

"In evaluating evidence, the [finder] of fact is not required to accept as dispositive those inferences that are consistent with the defendant's innocence. . . . The [finder of fact] may draw whatever inferences from the evidence or facts established by the evidence it deems to be reasonable and logical. . . .

"On appeal, we do not ask whether there is a reasonable view of the evidence that would support a reasonable hypothesis of innocence. We ask, instead, whether there is a reasonable view of the evidence that supports the [finder of fact's] verdict of guilty." (Internal quotation marks omitted.) *State* v. *Dojnia*, 190 Conn. App. 353, 371–72, 210 A.3d 586 (2019).

In the present case, the defendant essentially asks us to assess the credibility of the witnesses who testified at trial. It is well settled, however, that "[a reviewing court] cannot retry the facts or pass upon the credibility of the witnesses." (Internal quotation marks omitted.) *Frauenglass & Associates, LLC* v. *Enagbare*, 149 Conn. App. 103, 114, 88 A.3d 1246, cert. denied, 314 Conn. 927, 101 A.3d 273 (2014). "[W]e must defer to the finder of fact's evaluation of the credibility of the witnesses that is based on its invaluable firsthand observation of their conduct, demeanor and attitude. . . . [The fact finder] is free to juxtapose conflicting versions of events and determine which is more credible. . . . It is the [fact finder's] exclusive province to weigh the conflicting evidence and to determine the credibility of witnesses. . . . The [fact finder] can . . . decide what—all, none, or some—of a witness' testimony to accept or reject." (Citation omitted; internal quotation marks omitted.) *State* v. *Colon*, 117 Conn. App. 150, 154, 978 A.2d 99 (2009). "Because it is the sole province of the trier of fact to assess the credibility of witnesses, it is not our role to second-guess such credibility determinations." (Internal quotation marks omitted.) *State* v. *Carlos C.*, 165 Conn. App. 195, 200, 138 A.3d 1090, cert. denied, 322 Conn. 906, 140 A.3d 977 (2016).

In the present matter, the jury as the finder of fact was free to credit or discredit the testimony of the police officers. Moreover, the jury heard testimony from the defendant that the police officers' testimony was false. Accordingly, the jury was free to weigh the conflicting testimony and assess the credibility of the various witnesses. Thus, after construing the evidence in the light most favorable to sustaining the verdict, we conclude that there is a reasonable view of the evidence that supports the jury's verdict of guilty. Therefore, we reject the defendant's claim.

III

The defendant next claims that the court improperly admitted testimony from police officers about statements made in an Internet video posted by the defendant, of which the officers were made aware by the FBI, before their interaction with him on August 11, 2016. In that video, the defendant made derogatory remarks about Jewish people and discussed desecrating Jewish temples. Specifically, the defendant argues that the testimony was irrelevant and unduly prejudicial. Because the defendant failed to preserve his evidentiary claim, we decline to review it.

The following additional facts are relevant to the defendant's claim. On February 23, 2017, the state indicated to the court that it intended to offer into evidence as many as two videos that the defendant made and posted on the Internet in which he made derogatory remarks about Jewish people and discussed desecrating Jewish temples. The defendant argued that the videos were irrelevant, to which the court responded that it was not inclined to make an advance ruling on the admissibility of the videos. On February 27, 2017, the state indicated to the court, for the sake of judicial economy and to reduce the prejudicial effects of the video,[10] that it instead intended to offer the testimony of the police officers who, before encountering the defendant, viewed the video or had been made aware of the comments made in the video via the circulated memorandum, and how those comments affected their subsequent actions.[11] In light of the state's position, the court stated that it would consider objections to the testimony at trial on a question by question basis.

On the first day of trial, the defendant asked the court about the state's use of the video at trial. The court reiterated that the state did not intend to offer the video and that it instead would elicit testimony from its witnesses about the contents of the video. In response, the defendant argued that the testimony was irrelevant, immaterial, prejudicial and inflammatory. Further, he stated that he did not have a "problem with [the state] presenting the video," but that he wanted to introduce other videos that he posted on the Internet to clarify what he meant by desecrating Jewish temples. The court again reminded the defendant that the state was not offering the videos and that it was not going to make any evidentiary rulings in advance. Moreover, the court explained to the defendant that he would be permitted to testify about what he meant in the videos if he wanted to do so.

During the state's case-in-chief, Lieutenant Baker, Sergeant Perrotta, Sergeant Martinez, and Sergeant Trew all testified about their knowledge of the content of the defendant's video, which had been made prior to their encounters with him on August 11, 2016. The defendant failed to object to any of the state's questions and did not move to strike any testimony.[12] Following

this testimony, the defendant, in a colloquy with the court, again argued that the testimony was irrelevant and prejudicial and that, as a result, he should be able to offer other Internet videos that would purportedly clarify his comments from the video about which the police officers testified. The defendant, however, did not move to strike any of the elicited testimony.

"[T]he standard for the preservation of a claim alleging an improper evidentiary ruling at trial is well settled. This court is not bound to consider claims of law not made at the trial. . . . In order to preserve an evidentiary ruling for review, trial counsel must object properly. . . . In objecting to evidence, counsel must properly articulate the basis of the objection so as to apprise the trial court of the precise nature of the objection and its real purpose, in order to form an adequate basis for a reviewable ruling. . . . Once counsel states the authority and ground of [the] objection, any appeal will be limited to the ground asserted. . . .

"These requirements are not simply formalities. They serve to alert the trial court to potential error while there is still time for the court to act. . . . Assigning error to a court's evidentiary rulings on the basis of objections never raised at trial unfairly subjects the court and the opposing party to trial by ambush." (Internal quotation marks omitted.) *State* v. *Jorge P.*, 308 Conn. 740, 753, 66 A.3d 869 (2013).

This court has recognized that "where the court's evidentiary ruling is preliminary and not final, it is incumbent on the defendant to seek a definitive ruling [when the evidence is offered at trial] in order to fully comply with the requirements of our court rules of practice for preserving his claim of error . . . ." (Internal quotation marks omitted.) *State* v. *Patel*, 186 Conn. App., 814, 844, 201 A.3d 459, cert. denied, 331 Conn. 906, 203 A.3d 569 (2019), quoting *State* v. *Johnson*, 214 Conn. 161, 170, 571 A.2d 79 (1990); see also *State* v. *Ramos*, 36 Conn. App. 831, 837, 661 A.2d 606, 610 (declining to review evidentiary claim where defendant's objection premature and never renewed), cert. denied, 235 Conn. 902, 665 A.2d 905 (1995).

As previously discussed, the court made clear to the parties that it was not going to make any ruling in advance of the officers' testimony and that it would instead consider any objections as they were raised during the presentation of evidence. Throughout the testimony, the defendant did not object to any of the state's questions or move to strike any testimony. At trial, the defendant argued that the testimony was irrelevant, but only in support of his argument that he then should be able to introduce evidence to demonstrate that he had previous peaceful interactions at Jewish temples. In other words, the defendant was not arguing that the testimony should be excluded or stricken from the record, but rather he was arguing that other videos

should have been admitted to mitigate the prejudicial effects of the officers' testimony. As a result, the defendant failed to secure from the court a finalized, specific ruling as to any of the testimony elicited at trial. Accordingly, we decline to review the defendant's evidentiary claim.[13]

IV

The defendant next appears to claim that the court abused its discretion in denying his request to excuse a juror for cause. We disagree.

The following additional facts are relevant to the defendant's claim. On the second day of jury selection, the parties interviewed D[14] as a potential juror. During voir dire, D stated that she was on the board of her child's Montessori school and that she made several films promoting the school. The defendant then asked D if she could be an impartial juror even if she heard derogatory remarks about Montessori schools, to which D replied that she could. When the state asked a similar question, she reiterated that she believed that she could be fair and impartial.[15] The defendant, having used all of his preemptory challenges, then moved to excuse D for cause, arguing that he had posted several videos online in which he discussed "the corruption in some of these Montessori schools," and that, given her ties to a Montessori school, she could not be an impartial juror. The court denied the defendant's challenge and made D a full juror, stating that the defendant was not on trial for having made verbal attacks on Montessori schools.

We begin with the standard of review and relevant principles of law. "The constitutional standard of fairness requires that a defendant have a panel of impartial, indifferent jurors. . . . [T]he enactment of article first, § 19, of the Connecticut constitution, as amended, reflects the abiding belief of our citizenry that an impartial and fairly chosen jury is the cornerstone of our criminal justice system. . . . We have held that if a potential juror has such a fixed and settled opinion in a case that he cannot judge impartially the guilt of the defendant, he should not be selected to sit on the panel. . . .

"The trial court is vested with wide discretion in determining the competency of jurors to serve, and that judgment will not be disturbed absent a showing of an abuse of discretion. . . . On appeal, the defendant bears the burden of showing that the rulings of the trial court resulted in a jury that could not judge his guilt impartially. . . . Accordingly, we review the defendant's claim for an abuse of discretion." (Citation omitted; internal quotation marks omitted.) *State* v. *Erick L.*, 168 Conn. App. 386, 417, 147 A.3d 1053, cert. denied, 324 Conn. 901, 151 A.3d 1287 (2016).

As previously discussed, D repeatedly stated during

voir dire that she was able to serve as an impartial juror. Nowhere in the record is there an indication that D would demonstrate such a fixed and settled opinion in the case that she could not judge the defendant impartially. Moreover, the court was able to observe D's demeanor in deciding whether to excuse her for cause, and there is no indication in the record that her demeanor suggested that she could not be a fair and impartial juror. See *State* v. *Tucker*, 226 Conn. 618, 636, 629 A.2d 1067 (1993) ("[d]emeanor plays an important part in the determination of a juror's impartiality"). Given the court's broad discretion in deciding whether to excuse a juror for cause, we do not conclude in this instance that it abused its discretion. See id. (assessing potential juror's impartiality is "particularly within the province of the trial judge and the trial judge has broad discretion in deciding whether to excuse a juror for cause" [internal quotation marks omitted]).[16]

V

Additionally, the defendant claims that the trial court violated his right to compulsory process under article first, § 8, of the Connecticut constitution because it declined to issue a subpoena to a rabbi from New Jersey.[17] We disagree.

The following additional facts are relevant to the defendant's claim. The defendant filed an application for the issuance of a subpoena to compel a rabbi in New Jersey to testify. On January 23, 2017, the court, *White, J.*, stated that it would consider the application at the time of trial. The defendant did not inquire about the subpoena again until after the first day of trial on March 1, 2017. At that time, the court, *Blawie, J.*, indicated that he was unaware of such an application. When the court asked the defendant about the anticipated content of the rabbi's testimony, the defendant proffered that the rabbi would testify that the defendant had a cordial visit with him at his New Jersey temple and that the defendant was doing no harm while he was traveling around the country. After the state objected, the trial court ruled that it would not issue the subpoena on the ground that the rabbi's testimony was irrelevant to the case.

As a preliminary matter, we note that although the defendant has failed to preserve his constitutional claim at trial, we nevertheless review it pursuant to *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), as modified by *In re Yasiel R.*, 317 Conn. 773, 781, 120 A.3d 1188 (2015). Under *Golding*, "a defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation . . . exists and . . . deprived the defendant of a fair trial; and (4) if subject

to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. In the absence of any one of these conditions, the defendant's claim will fail." (Emphasis in original; footnote omitted.) *State* v. *Golding*, supra, 239–40. The defendant satisfies the first two prongs of *Golding* because the record is adequate for review, and because he alleges a violation of his right to compulsory process, his claim is of a constitutional magnitude. We conclude, however, that the defendant's claim fails under the third prong of *Golding* because he has failed to demonstrate that the alleged constitutional violation exists and that it deprived him of a fair trial.

"The sixth amendment [to] the United States constitution provides in relevant part that [i]n all criminal prosecutions, the accused shall enjoy the right . . . to have compulsory process for obtaining witnesses in his favor . . . . The right to compulsory process has been made applicable to state prosecutions through the due process clause of the fourteenth amendment. . . . The same right is protected under article first, § 8, of our state constitution. . . .

"It is well established that [t]he federal constitution require[s] that criminal defendants be afforded a meaningful opportunity to present a complete defense. . . . The sixth amendment . . . [guarantees] the right to offer the testimony of witnesses, and to compel their attendance, if necessary, [and] is in plain terms the right to present a defense, the right to present the defendant's version of the facts as well as the prosecution's to the jury so that it may decide where the truth lies. . . .

"Although exclusionary rules of evidence cannot be applied mechanistically to deprive a defendant of his [compulsory process] rights, the constitution does not require that a defendant be permitted to present every piece of evidence he wishes. . . . The defendant's sixth amendment right . . . does not require the trial court to forgo completely restraints on the admissibility of evidence. . . . Generally, an accused must comply with established rules of procedure and evidence in exercising his right to present a defense. . . . A defendant, therefore, may introduce only relevant evidence, and, if the proffered evidence is not relevant, its exclusion is proper and the defendant's right is not violated. . . . To establish a violation of the right to compulsory process when a defendant is deprived of a certain witness at trial, [h]e must at least make some plausible showing of how [the] testimony would have been both material and favorable to his defense." (Citations omitted; internal quotation marks omitted.) *State* v. *Nowacki*, 155 Conn. App. 758, 770–72, 111 A.3d 911 (2015).

"Relevant evidence is evidence that has a logical tendency to aid the trier in the determination of an issue. . . . One fact is relevant to another if in the common

course of events the existence of one, alone or with other facts, renders the existence of the other either more certain or more probable. . . . Evidence is irrelevant or too remote if there is such a want of open and visible connection between the evidentiary and principal facts that, all things considered, the former is not worthy or safe to be admitted in the proof of the latter. . . . The trial court has wide discretion to determine the relevancy of evidence and [e]very reasonable presumption should be made in favor of the correctness of the court's ruling in determining whether there has been an abuse of discretion.'' (Internal quotation marks omitted.) *State* v. *Martinez*, 171 Conn. App. 702, 726, 158 A.3d 373, cert. denied, 325 Conn. 925, 160 A.3d 1067 (2017).

In the present case, it is apparent, on the basis of the defendant's proffer, that the testimony he sought to illicit from the rabbi was irrelevant and, accordingly, inadmissible. Specifically, testimony regarding one peaceful interaction that the rabbi had with the defendant or that the defendant was not doing any harm on his "spiritual journey" was not relevant to the charges of interfering with an officer and disorderly conduct for which he was on trial.[18] Accordingly, we conclude that the defendant's constitutional right to compulsory process was not violated.

## VI

The defendant also claims that the court improperly found him incompetent to stand trial but restorable to competency before later determining that he then was competent. Because the defendant has failed to analyze how the court erred by initially finding him incompetent, we decline to review his claim.

The following additional facts and procedural history are relevant to the resolution of this claim. On August 12, 2016, the defendant was arraigned. At this time, the defendant was represented by a public defender, who orally moved for the court to order a competency evaluation of the defendant. The court subsequently granted the motion. On September 9, 2016, the court again ordered a competency evaluation because its prior order had not been processed.[19] On October 5, 2016, the court's hearing on the defendant's competency was continued to a later date.[20] On October 25, 2016, the court held a competency hearing during which, following testimony from an expert who evaluated the defendant, it found that the defendant was incompetent to stand trial, but that it was likely that he could be restored to competency. Accordingly, the court committed the defendant to the Whiting Forensic Division of Connecticut Valley Hospital in Middletown for a period of sixty days. On December 27, 2016, the court, after it heard additional evidence, found that the defendant was competent to stand trial.

Although the defendant assumes in his argument that the court erred in its initial determination that he was incompetent to stand trial, his appellate brief contains no analysis as to how the court erroneously made that determination. The defendant neither analyzes the evidence of competency before the court nor, by reference to relevant law, attempts to undermine the court's finding. "It is well settled that [w]e are not required to review claims that are inadequately briefed . . . . We consistently have held that [a]nalysis, rather than mere abstract assertion, is required in order to avoid abandoning an issue by failure to brief the issue properly. . . . [F]or this court judiciously and efficiently to consider claims of error raised on appeal . . . the parties must clearly and fully set forth their arguments in their briefs. We do not reverse the judgment of a trial court on the basis of challenges to its rulings that have not been adequately briefed." (Internal quotation marks omitted.) *Nowacki* v. *Nowacki*, 129 Conn. App. 157, 163–64, 20 A.3d 702 (2011). Accordingly, we conclude that the defendant has briefed the issue inadequately and we decline to afford it review.

## VII

The defendant's final claim is that the court improperly imposed on him as part of his conditional discharge a special condition that he stay out of the state of Connecticut, except to attend judicial proceedings, in violation of his constitutional right to travel. The state argues that the defendant's claims are moot because the defendant's term of conditional discharge was set to expire in March, 2019, before a resolution of this appeal. We agree with the state.

We briefly set forth the facts relevant to the defendant's claim. The defendant was sentenced on March 20, 2017. At sentencing, the state requested that the court impose a sentence that included three years of probation. The court subsequently asked the defendant if he wanted to remain in Connecticut upon his release from custody, to which he replied that he did not. Accordingly, in lieu of imposing three years of probation, the court instead imposed a sentence that included a two year conditional discharge. One condition of the defendant's discharge was that he was to leave the state of Connecticut within seventy-two hours of being discharged by the Department of Correction and not return except for purposes related to his conditional discharge or to attend court appearances. When the court informed the defendant that it intended to impose such a condition on him, the defendant responded that "you could not pay me to . . . stay and live in this state. . . . I am going back to California." Further, when the court asked the defendant if he understood the condition, he replied that he understood "[c]ompletely" and that he had no desire to stay in Connecticut.

We begin our analysis with a brief discussion of the mootness doctrine. "Mootness implicates [the] court's subject matter jurisdiction and is thus a threshold matter for us to resolve . . . . It is a well-settled general rule that the existence of an actual controversy is an essential requisite to appellate jurisdiction; it is not the province of appellate courts to decide moot questions, disconnected from the granting of actual relief or from the determination of which no practical relief can follow. . . . Because mootness implicates subject matter jurisdiction, it presents a question of law over which our review is plenary." (Internal quotation marks omitted.) *Kirwan* v. *Kirwan*, 185 Conn. App. 713, 748, 197 A.3d 1000 (2018).

Because the defendant was sentenced on March 20, 2017, his conditional discharge expired in March, 2019. This appeal was not heard until April 10, 2019, and, therefore, the condition that the defendant now challenges on appeal has expired. Therefore, there is no practical relief that this court can provide to him. See *Fredo* v. *Fredo*, 185 Conn. App. 252, 264, 196 A.3d 1235 (2018) ("[a]n actual controversy must exist not only at the time the appeal is taken, but also throughout the pendency of the appeal" [internal quotation marks omitted]). Accordingly, we conclude that this court lacks subject matter jurisdiction over the defendant's claim because it is moot.[21]

The defendant argues that his claim is not moot because it falls within the collateral consequences exception to the mootness doctrine. We disagree.

"[T]he court may retain jurisdiction when a litigant shows that there is a reasonable possibility that prejudicial collateral consequences will occur. . . . [T]o invoke successfully the collateral consequences doctrine, the litigant must show that there is a reasonable possibility that prejudicial collateral consequences will occur. Accordingly, the litigant must establish these consequences by more than mere conjecture, but need not demonstrate that these consequences are more probable than not. This standard provides the necessary limitations on justiciability underlying the mootness doctrine itself. Where there is no direct practical relief available from the reversal of the judgment . . . the collateral consequences doctrine acts as a surrogate, calling for a determination whether a decision in the case can afford the litigant some practical relief in the future." (Internal quotation marks omitted.) *State* v. *Fletcher*, 183 Conn. App. 1, 6–7, 191 A.3d 1068, cert. denied, 330 Conn. 918, 193 A.3d 1212 (2018).

The defendant argues that being "identified as a threat severe enough to warrant banishment from an entire state for two years" will have lasting consequences throughout his life. The defendant also asserts that he has been denied employment because he has

failed background checks. He has failed, however, to allege, let alone demonstrate, that the condition of his conditional discharge banning him from Connecticut for two years led to his adverse employment consequences. Thus, the defendant's claim amounts to mere conjecture. The defendant only generally asserts that his sentencing will have lasting consequences without specifically demonstrating how a now expired restriction on his ability to enter the state of Connecticut would create a reasonable possibility that prejudicial collateral consequences will occur. Cf. *State* v. *McElveen*, 261 Conn. 198, 215–16, 802 A.2d 74 (2002) (collateral consequences exception applicable to challenge of defendant's parole revocation); *Anthony A.* v. *Commissioner of Correction*, 159 Conn. App. 226, 233–34, 122 A.3d 730 (2015) (collateral consequences exception applicable to claim related to petitioner's classification as sex offender), aff'd, 326 Conn. 668, 166 A.3d 614 (2017). Accordingly, we reject the defendant's argument that his claim falls within the collateral consequences exception to the mootness doctrine.

The appeal is dismissed with respect to claim seven; the judgment is affirmed in all other respects.

In this opinion the other judges concurred.

[1] See, e.g., *State* v. *Seekins*, 299 Conn. 141, 147–48, 8 A.3d 491 (2010) (defendant found incompetent to stand trial but restorable to competency).

[2] The defendant also alleges that the state has conspired to alter trial court transcripts and that documents vital to his appeal are missing. During the pendency of this appeal, the file in this case was inadvertently stripped of most of its contents. The state has included in its appendix any documents it deemed relevant to the defendant's claims on appeal. Additionally, at the defendant's request, the trial court transcripts were revised. On the basis of our review of the record, we determine that it is adequate for our review of the defendant's claims.

[3] No explosive devices were found in the defendant's vehicle.

[4] In a prior substitute information, the defendant was charged with four counts of interfering with an officer.

[5] On appeal, the defendant also claims that the trial court abused its discretion in permitting the state to file a substitute information before trial. We disagree.

It is well settled that "[b]efore the commencement of trial, a prosecutor has broad authority to amend an information . . . ." (Internal quotation marks omitted.) *State* v. *Greene*, 186 Conn. App. 534, 545, 200 A.3d 213 (2018). Moreover, Practice Book § 36-17 provides in relevant part: "If the trial has not commenced, the prosecuting authority may . . . file a substitute information. *Upon motion of the defendant*, the judicial authority, in its discretion, may strike the . . . substitute information, if the trial or the cause would be unduly delayed or the substantive rights of the defendant would be prejudiced." (Emphasis added.)

The defendant did not move to strike the substitute information, which would have required the court to utilize its discretion to determine whether the substitute information would have caused undue delay or prejudiced the substantive rights of the defendant. Because the court was not asked to make such a ruling, it cannot be said that the court abused its discretion. Accordingly, the defendant's claim fails.

[6] The defendant was provided with standby counsel.

[7] The conditions of the defendant's discharge were that he was to stay away from all Jewish establishments, facilities, schools and synagogues and to leave the state of Connecticut within seventy-two hours of being discharged by the Department of Correction and not to return with the exception of probation or court appearances.

[8] Before trial, the defendant filed a "motion to return suppressed evidence." In a colloquy with the court discussing the motion, the defendant briefly mentioned that he believed his vehicle was illegally seized and that

he wanted it to be moved from a private lot. This colloquy, however, centered only on the defendant's desire to have the vehicle removed from the lot, not whether it was illegally seized and used as evidence at trial. Moreover, at his sentencing, the state reiterated that the defendant's vehicle was not seized as evidence, but that it was towed to a private impound lot because it could not remain parked on the side of a public road.

[9] Although the defendant's analysis of this claim does not refer to evidentiary insufficiency, we interpret his argument to raise such a claim.

[10] Although the state originally had suggested that it might offer two videos, the state later mentioned only one video.

[11] The court in its limiting instruction to the jury also noted that the statements were offered to prove the defendant's possible motive as well as his state of mind and intent.

[12] The defendant's sole objection was that Lieutenant Baker's testimony was inaccurate.

[13] We also note that the defendant has failed to brief the issue of whether the court's alleged evidentiary error was harmful; accordingly, the defendant's claim is inadequately briefed. See *MacDermid, Inc.* v. *Leonetti*, 328 Conn. 726, 757, 183 A.3d 611 (2018) ("[w]e do not reach the merits of [a] claim [where] the defendant has not briefed how he was harmed by the allegedly improper evidentiary ruling" [internal quotation marks omitted]); see also *State* v. *LaVallee*, 101 Conn. App. 573, 579, 922 A.2d 316 ("[a]bsent any analysis as to how the [evidentiary] ruling harmed [the defendant], we are unable to conclude that the exclusion of this evidence was an abuse of discretion"), cert. denied, 284 Conn. 903, 931 A.2d 267 (2007).

[14] In accordance with our usual practice, we identify jurors by initials in order to protect their privacy interests. See *State* v. *Biggs*, 176 Conn. App. 687, 695 n.5, 171 A.3d 457, cert. denied, 327 Conn. 975, 174 A.3d 193 (2017).

[15] The following colloquy occurred between the state and D:

"Q. . . . If you were to hear evidence of a witness or the defendant making derogatory remarks about the Montessori school, would that make you more inclined to convict the defendant of the offenses he's charged with, even if the state hasn't proven it by the evidence?

"A. I would want to hear proof toward—toward that fact.

"Q. Okay.

"A. Yeah, I'd, you know, my feelings aside, you know, I would still need to have the evidence to prove it.

"Q. So, is it fair to say that even if you personally were offended by what the defendant said, if the state had not proven its case, you still—you would not convict him of the offenses?

"A. Yes, I—I agree with your statement, yes."

[16] The defendant also appears to insinuate in his principal appellate brief that the court improperly allowed the state to ask him on cross-examination about comments he made regarding Montessori schools. The defendant makes this assertion without any further discussion or analysis. Thus, to the extent that the defendant has attempted to raise an additional evidentiary claim, it is inadequately briefed. "Claims are inadequately briefed when they are merely mentioned and not briefed beyond a bare assertion. . . . Claims are also inadequately briefed when they . . . consist of conclusory assertions . . . with no mention of relevant authority and minimal or no citations from the record . . . ." (Internal quotation marks omitted.) *Estate of Rock* v. *University of Connecticut*, 323 Conn. 26, 33, 144 A.3d 420 (2016).

[17] The defendant also claims that the court improperly denied his request to submit a police report into evidence. The defendant makes only a conclusory statement that the court's evidentiary ruling was improper without providing any legal analysis. Accordingly, his claim is inadequately briefed. See *Estate of Rock* v. *University of Connecticut*, 323 Conn. 26, 33, 144 A.3d 420 (2016).

[18] The defendant concedes in his principal appellate brief that the rabbi's testimony was not directly related to the charges he faced. Rather, he argues that the testimony is relevant to the "principal issue of the case," which he views as whether the defendant was illegally seized as a threat to the Jewish community. The defendant misconstrues what was at issue in his underlying case and, as a result, the relevance of the testimony he sought to elicit at trial. The defendant was charged solely with three counts of interfering with an officer and one count of disorderly conduct on the basis of his conduct that took place on August 11, 2016, not in connection with his comments regarding the Jewish community.

[19] The defendant mentions in his appellate brief that he was improperly denied the right to be present at this proceeding. His defense counsel, however, waived his appearance.

[20] Likewise, the defendant also claims on appeal that he was improperly denied the right to be present at this proceeding. The matter was continued and, accordingly, we are not persuaded that the defendant is able to demonstrate how he was harmed.

[21] The state argues in its appellate brief that the defendant's claim also does not satisfy the capable of repetition yet evading review exception to the mootness doctrine. Although the defendant does not argue that his claim is subject to this exception, we note that we agree with the state's argument.

"To qualify under [the capable of repetition yet evading review] exception, an otherwise moot question must satisfy the following three requirements: First, the challenged action, or the effect of the challenged action, by its very nature, must be of a limited duration so that there is a strong likelihood that the substantial majority of cases raising a question about its validity will become moot before appellate litigation can be concluded. Second, there must be a reasonable likelihood that the question presented in the pending case will arise again in the future, and that it will affect either the same complaining party or a reasonably identifiable group for whom that party can be said to act as surrogate. Third, the question must have some public importance. Unless all three requirements are met, the appeal must be dismissed as moot." (Internal quotation marks omitted.) *Gainey* v. *Commissioner of Correction*, 181 Conn. App. 377, 383–84, 186 A.3d 784 (2018).

Under the unique circumstances of the defendant's case, we are not persuaded that there is a reasonable likelihood that the question presented in the pending case will arise again in the future, or that it will affect either the same complaining party or a reasonably identifiable group for whom that party can be said to act as surrogate. The defendant expressly agreed to the condition imposed on him and stated his desire not to return to the state. Thus, it is unlikely that the question presented will arise in the future.

---